1  Mark A. Romeo, Bar No. 173007
   mromeo@littler.com
2  Derek S. Hecht, Bar No. 273039
   dhecht@littler.com
3  LITTLER MENDELSON P.C.
   18565 Jamboree Road
4  Suite 800
   Irvine, California 92612
5  Telephone:  949.705.3000
   Fax No.:    949.724.1201
6
7  Attorneys for Plaintiff
   R. R. DONNELLEY & SONS COMPANY
8
                    UNITED STATES DISTRICT COURT
9
                  EASTERN DISTRICT OF CALIFORNIA
10
11
   R. R. DONNELLEY & SONS              Case No.  2:21-cv-00753 JAM AC
12 COMPANY, a Delaware corporation,
                                       FIRST AMENDED COMPLAINT
13          Plaintiff,                 FOR MONEY DAMAGES AND
                                       EQUITABLE RELIEF FOR:
14      v.
                                       (1) BREACH OF THE DUTY OF
15 JOHN PAPPAS III, an individual,         LOYALTY;
   MERILIZ INC., dba DOME PRINTING,
16 and DOES 1-10,                      (2) AIDING AND ABETTING
                                           BREACH OF THE DUTY OF
17          Defendants.                    LOYALTY;

18                                     (3) MISAPPROPRIATION OF
                                           TRADE SECRETS (CALIFORNIA
19                                         UNIFORM TRADE SECRETS
                                           ACT);
20                                     (4) MISAPPROPRIATION OF
                                           TRADE SECRETS (DEFEND
21                                         TRADE SECRETS ACT);

22                                     (5) BREACH OF CONTRACT; AND

                                       (6) COMPUTER CRIMES IN
23                                         VIOLATION OF CALIFORNIA
                                           PENAL CODE 502(c)
24                                     DEMAND FOR JURY TRIAL
25
                                       ASSIGNED FOR ALL PURPOSES
26                                     TO JUDGE JOHN A. MENDEZ
27                                     Trial Date: Not Set
                                       Complaint Filed: April 26, 2021
28

LITTLER MENDELSON P.C.
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

## NATURE OF THE CASE

1.    This is an action based upon: (1) breach of the duty of loyalty; (2) aiding and abetting a breach of the duty of loyalty; (3) California's Uniform Trade Secrets Act (Cal. Civ. Code § 3246, *et seq.*); (4) the Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq.*); (5) breach of contract; and (6) computer crimes in violation of California Penal Code Section 502(c).

2.    This is an action brought by R.R. Donnelley & Sons Company ("RRD") to prevent John Pappas III, a former senior, long-tenured, and highly compensated RRD employee, and his new employer, Meriliz Inc., dba Dome Printing ("Dome"), from using multiple proprietary and confidential documents that Pappas was entrusted to hold in confidence and use for the benefit of only RRD.  RRD also seeks to prevent Pappas and Dome from reaping the benefits of Pappas' multiple breaches of the duty of loyalty that he owed to RRD as one of its employees.

3.    Specifically, in late 2020 and early 2021, while employed by RRD, Pappas solicited RRD clients to move their work from RRD to his new employer, Dome. Pappas provided Dome with confidential opportunities and other RRD information in order to help Dome usurp these clients from RRD.  In particular, while Pappas was breaching his duty of loyalty and attempting to move business away from RRD, Pappas downloaded **784** RRD documents from RRD's Google Drive account, including numerous confidential and proprietary documents and trade secrets. Pappas downloaded these documents to a personal computer, not an RRD computer. He then deleted **916** documents from RRD's Google Drive account, including many of the files he had just downloaded.  Pappas had been given access to that Google Drive account as an employee of RRD and was to use it to further the business interests of RRD, not his own.  None of the unlawful actions taken by Pappas against RRD's interests were known to RRD at the time, and none of these actions were authorized in any way by RRD, and were certainly not done within the scope of Pappas' employment with RRD.

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

4.    Pappas did not hide his misconduct from Dome.  He sent several RRD documents to Dome's officers, including its then-president, Misha Pavlov.  Pappas also openly discussed with Dome that he had been soliciting RRD's customers (while employed by RRD) to move to Dome and expected them to move with him when his employment with Dome began.  Dome cooperated with Pappas, encouraged him in this process, and gladly reaped the benefit of Pappas' misconduct.  In fact, even after Pappas joined Dome as an employee, Dome permitted Pappas to continue using RRD's information, including by assisting Pappas in uploading a list of over 600 RRD contacts, complete with confidential strategic notes and opportunities, to Dome's systems.  Dome also prepared pricing for Pappas to use to bid on a project that Pappas had received on behalf of RRD and which he was required to, but did not, bring to the attention of RRD.  Dome prepared this pricing for Pappas while Pappas was still employed by RRD.

5.    Accordingly, RRD seeks injunctive relief, damages, and all other appropriate relief.

## THE PARTIES

6.    RRD is a global provider of integrated communications.  RRD works collaboratively with more than 60,000 customers worldwide to develop custom communications solutions that reduce costs, drive top-line growth, enhance return on investment and increase compliance.  RRD is incorporated in the State of Delaware, has its corporate headquarters in Chicago, Illinois, and has offices and facilities throughout the United States, including in the County of Sacramento.

7.    American Lithographers Inc. (d/b/a Pacific Standard Print (or "PSP") ("ALI")), was a top web and sheet-fed printer company with facilities in both Hayward and Sacramento, California.  In early 2002, Consolidated Graphics, Inc. (or "CGX") acquired ALI, and most of its 100 employees.  At the time, CGX, based in Houston, Texas, was the largest provider of digital and commercial printing, fulfillment services, print management and proprietary Internet-based technology

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

3

solutions. CGX was a highly sought-after company, known in the industry for its outstanding employees and their ability to provide the service and responsiveness of a local printing company while offering customers the flexible solutions and competitive pricing available from a wide network.

8.    In January 2014, RRD acquired CGX for approximately $620 million. Through this acquisition, RRD expected to and did benefit from the adoption of CGX's local service model for all of RRD's commercial printing group.

9.    Defendant John Pappas III is an adult individual whose last known address is 5408 Monalee Ave., Sacramento, CA 95819.  Pappas began his employment with CGX on or about May 12, 2003.  After the January 2014 acquisition of CGX by RRD, Pappas was an employee of RRD until he resigned on January 13, 2021.

10.    Meriliz Incorporated is a California corporation doing business as Dome Printing, with its principal address at 2031 Dome Lane, McClellan, California 95652. Dome now employs Pappas, who apparently began performing work for Dome as early as November 23, 2020 (while still being employed by RRD) and who was a salaried employee of Dome beginning on January 4, 2021.  Pappas' last day with RRD was not until January 13, 2021.  Dome is a direct competitor with RRD in the commercial printing market.

11.    The actions and omissions alleged herein to have been undertaken by the Defendants were taken by each Defendant individually, were actions and omissions that each Defendant authorized, controlled, directed, or had the ability to authorize, control, or direct, and/or were actions and omissions each Defendant assisted, participated in, or otherwise encouraged, and are actions for which each Defendant is liable.  Each Defendant aided and abetted the actions of the Defendants set forth herein, had knowledge of those actions and omissions, provided assistance, and benefitted from those actions and omissions.  Each of the Defendants was the agent of each of the remaining Defendants, and in doing the things herein alleged,

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

1 was acting within the course and scope of such agency and with the permission and

2 consent of other Defendants.

3    12.    Further, Defendants, and each of them, with full knowledge and intent

4 and without justification, and as part of a conspiracy to harm RRD, each agreed to

5 act in concert with the other Defendants to commit the torts and crimes as set forth

6 herein to further their own financial gain, to aid in the formation of their new venture,

7 and to harm RRD.  The formation of the conspiracy dates back to at least October

8 2020, when Defendant Pappas sent RRD company contacts and price lists to Dome,

9 and in any event, well before Pappas left RRD.  As a result of the wrongful and

10 tortious conduct of Defendants as alleged herein, Defendants have been unjustly

11 enriched and RRD has suffered, and will continue to suffer, damages in amounts to

12 be proven at trial.

13    13.    The true names and capacities, whether individual, corporate,

14 partnership, associate or otherwise, of Defendants sued herein as DOES 1 through

15 10, inclusive, are currently unknown to RRD, who therefore sues said Defendants by

16 such fictitious names.  RRD is informed and believes, and based thereon alleges, that

17 each of the Defendants designated herein as a DOE is legally responsible in some

18 manner for the events and happenings referred to herein, and caused injury and

19 damage proximately thereby to RRD as hereinafter alleged.  RRD will seek leave of

20 court to amend this Complaint to show the true names and capacities of the

21 Defendants designated herein as DOES when they have been ascertained.

22                              **JURISDICTION**

23    14.    This Court has original jurisdiction over this action pursuant to the

24 Defend Trade Secrets Act, 18 U.S.C. § 1836(c) and 28 U.S.C. § 1367.

25                                **VENUE**

26    15.    The conduct alleged herein, which included the theft of RRD's

27 intellectual property, occurred within, or Defendants directed their wrongful conduct

28 towards, the City and County of Sacramento, State of California.  Accordingly,

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

5

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

1  jurisdiction and venue are therefore proper within the Eastern District of California
2  pursuant to 28 U.S.C. § 1391(a)(2) and (3).

3  **RRD AND ITS BUSINESS**

4  16.    RRD draws on a range of proprietary and commercially available digital
5  and conventional technologies deployed across four continents.  RRD employs a
6  suite of leading Internet-based and other resources to provide pre-press, printing,
7  bindery, direct mail, sourcing, and business process outsourcing services to clients in
8  virtually every private and public sector.

9  **RRD'S KEY CUSTOMER RELATIONSHIPS**

10  17.    A large part of RRD's business is dependent on developing and
11  maintaining its relationships with its clients.  RRD has expended considerable time,
12  expense, and resources developing a targeted client base throughout the United States
13  and internationally.   It has done so through paying salespersons like Pappas hundreds
14  of thousands of dollars per year to attempt to attract and then retain key client
15  relationships.

16  18.    The clients Pappas serviced on behalf of RRD included, among other
17  things, political consultants, union organizations, and healthcare companies.  Those
18  clients looked to RRD to print, finish, mail, and ship marketing materials.  For
19  example, during an ▮▮▮▮▮▮▮▮, RRD would provide ▮▮▮▮▮▮▮▮▮▮
20  ▮▮▮▮▮▮▮▮▮▮.  Similarly, RRD would work with unions (including, for
21  example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮) to prepare and send out
22  mailers communicating on a number of topics with their members.  In the healthcare
23  space, RRD would help clients communicate with their customers/members on things
24  such as available services.   In particular, RRD was communicating with ▮▮▮
25  ▮▮▮▮▮▮▮ one of its clients, about ▮▮▮▮▮▮▮▮▮▮▮▮
26  ▮▮▮▮▮▮▮.

27  / / /
28  / / /

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine CA  92612
949.705.3000

6

## RRD'S CONFIDENTIAL AND TRADE SECRET INFORMATION

### RRD Has Developed Numerous Trade Secrets and Maintains Other Valuable, Confidential Information

19.    RRD has invested years of time and millions of dollars developing is proprietary and confidential information, including trade secrets.  Specifically, RRD has developed pricing information, compilations of quotes, job specifications and client preferences (and compilations of such information), internal production and delivery processes (and compilations of such information), and client and vendor information (and compilations thereof).

20.    These trade secrets are compiled and stored in password-protected databases and/or systems (including email systems) by RRD.  For example, RRD uses the customer relationship management ("CRM") software "Jobz" to store customer and project information.  Additionally, RRD uses "Salesforce," another CRM software tool, to maintain customer, potential customer, and project information.  RRD's Jobz and Salesforce databases are password-protected and may only be accessed by authorized RRD employees to further the best interests of RRD.

21.    Additionally, each RRD employee has access to a Google Drive account.  RRD provides employees access to Google Drive so that they can store data belonging to RRD, including the proprietary information referenced above.  An employee accesses Google Drive through the RRD-owned Google account (managed through Active Directory).  Access to RRD Google Drives is limited to authorized RRD employees and requires a password.

22.    RRD derives significant value and advantage from the confidential and trade secret nature of its information.   RRD's confidential and proprietary information is critical to its ability to successfully compete in the marketplace.

23.    A competitor's or other third party's use of these trade secrets would result in irreparable harm to RRD.  For example, it would give RRD's competitors an advantage over RRD in pricing and would save the competitor the time, effort,

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

and resources RRD required to create this information. Additionally, if a competitor were to obtain information regarding a customer's needs and/or preferences, the competitor would obtain an unfair advantage over RRD in bidding against RRD for that work.

**RRD's Efforts to Protect Its Confidential and Trade Secret Information**

24.    RRD takes the protection of its information very seriously and expends a considerable amount of time and money to keep its information secure. At all relevant times, RRD has taken extensive and reasonable steps to protect the confidentiality of its trade secrets and other confidential information. This includes:

    a. Requiring Physical ID badges/keycards for employee/contractor access to RRD facilities. Additional physical tokens may be required for access to restricted areas such as production floors, IT facilities, or other sensitive operational areas. Visitors are issued temporary badges which must be checked out from building security. All visitors must be escorted while at RRD facilities.

    b. Requiring that a person accessing RRD's systems use at least a secure username/password. Anonymous authentication is explicitly prohibited except for public websites and applications. Further, in the case of VPN access, multi-factor authentication ("MFA") is required. MFA can take the form of a "push" to a user's mobile device, the entry of a token code generated on the user's mobile device, a text message to the user's mobile device, or a phone call to the user's mobile device or pre-registered landline telephone.

    c. When a person logs onto an RRD device and/or system and/or database, the person receives a message advising of the

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine CA 92612
949.705.3000

8

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

confidential nature of the information they are about to enter/access.

    i. Specifically, users receive the following warning banner when accessing Windows assets:



    ii. Then, the following warning banner displayed when accessing RRD's Citrix:



d. Deploying Palo Alto Networks next generation firewalls which control access to internet content when the user is connected to RRD's VPN solution. These firewalls permit or deny access to various internet applications and destinations based on the user's

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine CA 92612
949.705.3000

9

1    identity on the RRD network. Users are assigned to specific
2    access groups based on their job role and other business
3    requirements.

4    e. Using Google Workspace for email, messaging, document
5        editing, collaboration, and online file storage, with all logging
6        features are enabled and logs are retained for 10 years. Copies of
7        all email messages, instant messages/chats, drive contents, and
8        documents are retained in a forensic e-discovery archive for 10
9        years.

10    f. Using security technology that helps prevent a lost or stolen hard
11        drive from being copied.  Specifically, for Windows IT assets,
12        RRD uses Bitlocker for FDE, and for MacOS/Apple assets, RRD
13        uses Apple FileVault.

14    g. Deploying mobile device management software on computer
15        assets (laptops, desktops, and services) as well as mobile devices
16        (personal or corporate-owned) that have the ability to access
17        RRD's Google Workspace platform, which ensure that the device
18        has and maintains adequate security to access RRD's platforms
19        and data.

20    25.    In addition, RRD (and its predecessors, including CGX) requires each
21    of its employees, including Pappas, to sign a confidentiality agreement as part of the
22    onboarding process.  A true and correct copy of the Confidentiality Agreement that
23    Pappas signed is attached hereto as **Exhibit 1** (sometimes, the "Confidentiality
24    Agreement"). Specifically, Pappas agreed in the Confidentiality Agreement to the
25    following:

26    "Except as my assigned duties may require or as the
       Company may otherwise consent in writing,  will not
27    disclose at any time – ether during my work for the
       Company or subsequent to my employment – any
28    proprietary or confidential information, knowledge of any

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

10

1  invention, or any other data relating to the Company's
2  business, products or operations which I have developed or
   received during the course of my employment. I agree that
3  upon the termination of my employment with the Company
   (whether voluntary or involuntary), within one week of the
4  termination I will promptly return all items of tangible
   personal property belonging to the Company – as well as
5  all documents and data relating to the Company's
   operations – that are in my possession.  This obligation
6  extends to 'hard copies' of documents, as well as all
   computer files (including items maintained on computer
7  hard drives and computer disks)."

8  26.    RRD provides employees like Pappas with a laptop and smart phone to

9  help them carry out the business duties assigned to them.  RRD employees, like

10  Pappas, are required to acknowledge receipt of RRD's "Electronic Information and

11  Systems Use Policy."  That policy makes very clear to employees that "RRD's

12  electronic communications system is intended to facilitate company business. It is an

13  invaluable business tool that helps us compete in the marketplace and communicate

14  with each other."  **Exhibit 2** (Electronic Information and Systems Use Policy dated

15  8/5/13 ("EISUP."))  The EISUP also states:

16  "For purposes of this policy, the term "Electronic
   Communications System" refers to all computers,
17  computer systems, voice mail, electronic messaging
   systems or services, document collaboration system or
18  services, online application services, network, intranet or
   Internet access system owned, leased, contracted, operated,
19  maintained or managed by RRD. All messages, files and
   other data created, uploaded, downloaded, sent, received,
20  or stored on or through any of these systems are also
   covered by the RRD Electronic Communications Policy."
21

22  27.  The EISUP also makes clear that

23  "Primary usage of RRD's electronic communications
   system should be limited to business related purposes.
24  Incidental personal use is permissible if the use is lawful
   and ethical, does not consume more than a trivial amount
25  of resources that could otherwise be used for business
   purposes, does not interfere with worker productivity and
26  does not preempt any business activity. While RRD allows
   its employees limited personal use of the Electronic
27  Communications System, use of the Electronic
   Communications System for reasons adverse to the
28  Company is expressly prohibited."

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

11

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

*Id.*

28.    Additionally, RRD reminds its employees that they may not:

- Copy, transmit, or use any copyrighted material, trade secret, confidential, or proprietary information belonging to RRD or its clients (actual or prospective), unless doing so as part of an authorized business purpose.

- Store RRD email or proprietary content or conduct RRD business on any third party or personal email, collaboration, social media or storage service or device unless the service is provided under an approved contract with RRD or required under a contractual obligation with an RRD customer.

    * * *

- Use the Electronic Communications System in any way that violates RRD's Principles of Ethical Business Conduct, HR Core Policies, or any other company policy or practice…

*Id.*

29.    Separately, in May 2014, RRD put in place a revised "Policy on Confidential Information, Customer Information and Taking of Customer Property ("PCICITCP"). That policy, like other RRD policies, is maintained on the RRD intranet (insideRRD). It provides:

> This policy governs the use of confidential and proprietary information of the Company and third parties, including customers and suppliers and sets forth the prohibition against the taking of customer property.
>
> **Policy:**
>
> Each of us in the course of performing our job may be exposed to information that is either confidential or proprietary to the Company or to a third party, such as a customer or vendor. No employee, director or other person learning of confidential or proprietary information in his or her work for the Company may use this information for anything other than the performance of his or her job, and may never use this information for personal gain.
>
> 'Confidential Information' means information that has not been made available generally to the public by its owner (the Company, a customer, or a vendor) or information that has been identified as confidential by the Company or has

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine CA 92612
949.705.3000

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

1    been maintained as confidential from outside parties and is
2    recognized as intended for internal disclosure only.

3   A true and correct copy of the PCICITCP is attached hereto as **Exhibit 3**.

4       30.    The PCICITCP applies to "plans of our customers or prospects for new
5   or altered distribution, marketing or products." *Id.*

6       31.    Further, Pappas was subject to RRD's "Principles of Ethical Business
7   Conduct," which at pg. 10 provides:

8        All employees should protect the company's assets and
9        ensure their efficient use. Theft, carelessness and waste
         have a direct impact on the company's profitability. All
10       company assets should be used for legitimate business
         purposes.

11  A true and correct copy of the Principles of Ethical Business Conduct is attached
12  hereto as **Exhibit 4**.

13      32.    Likewise, Pappas was specifically told:

14       No employee of RRD or its subsidiary companies should
15       have any business, financial, civic, governmental or
         professional interest outside of RRD that in any way
16       conflicts with, or appears to conflict with, such employee's
         ability to perform his or her duties at the company with
17       undivided loyalty, without the express written consent of
         the Chief Compliance Officer. In the event any such
18       conflict has been consented to as provided in this policy,
         the affected employee must advise all appropriate members
19       of management and, if appropriate, the Audit Committee
         of the Board of Directors, of any such conflict whenever
20       relevant to business decisions at RRD in which the affected
         employee is involved…

21  *Id.* at pg. 12.

22      33.    Pappas was required to, and did, agree to abide by these provisions as a
23  condition of his employment and/or continued employment with RRD.  In particular,
24  he was required to review and sign an acknowledgment of the Principles of Ethical
25  Business Conduct annually, and last did so on April 9, 2020.

26          **DEFENDANT PAPPAS' EMPLOYMENT WITH RRD**

27      34.    Pappas was a senior, long-tenured, and highly compensated RRD
28  employee.  He began his employment with CGX on or about May 12, 2003.  When

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

13

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

1    RRD acquired CGX, Pappas's continued his employment with RRD.  As a result, he

2    was made privy to and granted access to some of RRD's most sensitive customer-

3    related data and other proprietary and confidential information.  On January 13, 2021,

4    Pappas gave notice that he was resigning his employment with RRD.

5        35.    An important part of Pappas' job duties was to find and foster

6    relationships with companies that needed printing-related services.  He would do so

7    by emailing and otherwise meeting face-to-face with such clients and prospective

8    clients so that he could stay apprised of their printing and other related needs that he

9    believed could be serviced by RRD.   Once Pappas obtained an order from a client,

10   Pappas would work with others at RRD to make sure that such orders were timely

11   fulfilled and delivered.

12                        **DEFENDANTS' MISCONDUCT**
13        *Massive Downloading of RRD Confidential and Proprietary Documents*

14       36.    On December 11, 2020, Pappas accessed RRD's Google Drive Account

15   and selectively downloaded **784** documents to his personal computer.  These files

16   contained numerous confidential and proprietary RRD documents and trade secrets.

17   These downloads occurred over the course of an hour, far too quickly for Pappas to

18   be actually reviewing or using the documents.  Rather, this mass and rapid download

19   indicates that Pappas was engaged in a mass transfer of information away from RRD

20   and for his own personal benefit.

21       37.    Almost immediately after he finished these downloads, Pappas began to

22   mass-delete information off of RRD's Google Drive Account, including many of the

23   files he had just downloaded.  In total, Pappas deleted **916** files from RRD's Google

24   Drive account.  In short, Pappas took hundreds of documents for himself, and then

25   deleted them (and other documents) from RRD's account.

26       38.    Pappas had no legitimate, RRD business reason to download or delete

27   these documents. A true and correct copy of a listing of the files downloaded and

28   deleted by Pappas is attached hereto as **Exhibit 8**.

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

14

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

*Diverting Customers and Business Opportunities Away from RRD*

39.    In addition to this mass download and deletion of RRD information, Pappas also began to divert customers and business opportunities away from RRD months prior to his resignation.

40.    On November 25, 2020, Pappas received an email from an RRD client, ████████████████████████, notifying Pappas of an opportunity to provide printing services to a company.  Instead of retaining that potential opportunity for RRD, Pappas, instead, forwarded to Misha Pavlov (Dome's then-president) asking "Let me know what *we* can do on this one.  Pretty sure *we* would bill ████████ ██████████." (Emphasis added.)  A true and correct copy of that November 25, 2020, email at 3:58 a.m. is attached hereto as **Exhibit 5.**

41.    On December 2, 2020, Pappas wrote to his brother, Jeff Pappas, an RRD customer, criticizing RRD's leadership and strategic direction for the printing business.  In an email, Pappas told his brother that "I am fairly certain I am taking the position at Dome." Dome Printing is a competitor of RRD.  In that same email, Pappas told his brother:

"████████████ are on board as are ██████████ and th██████████m wor██████ also cont██████ from ██████████s all for it and excl██████ need th██████ and a vendor that has the **capabilities of Dome.**" (Emphasis added.)

42.    A true and correct copy of Pappas' December 2, 2020 email is attached hereto as **Exhibit 6.**

43.    ██████████ is a representative of ██████████ and ██████████ is a representative of ██████████. <u>Both</u> ██████████ were RRD clients, as is the ████████████████████████████  Likewise, ██████████ is a division of an entity known as ██████████ RRD provided printing and direct mail services to both ██████████.  Significantly, Pappas'

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine CA 92612
949.705.3000

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

1   sales for these five key clients were approximately $■■■ million in 2020 (making

2   up more than 2/3 of his total 2020 sales). Pappas's email is an admission by Pappas

3   that he had, while still an RRD employee, among other things, breached his duty of

4   loyalty, contacting these RRD customers in an effort to convince them to take their

5   business away from RRD and to his soon-to-be new employer. Indeed, Dome and

6   Pappas have confirmed that both ■■■■■■■■ have shifted business to

7   Dome that in this year alone Dome has done over $■■■ of business with these

8   customers.

9        44.   On December 8, 2020, the ■■■■■■■■■■ wrote to Pappas

10  using his RRD email address, noting "[y]our organization (referring to RRD) did

11  another fantastic job for us on our previous New Hire mailings and as a result I am

12  requesting an estimate for our upcoming New Hire mailing in January 2021." The

13  ■■■■■■■■■ asked for a quote for this new project. Pappas forwarded

14  that email to his personal email account. A true and correct copy of Pappas'

15  December 10, 2020, email (and underlying December 8, 2020 email at 11:46 a.m.) is

16  attached hereto as **Exhibit 7.**

17       45.   Then, two days before Pappas resigned, Pappas created a new personal

18  email account and sent multiple "test" emails between his various personal accounts

19  and his RRD business email account including one sent on January 11, 2021 at 1:25

20  a.m. It was not typical for Pappas to be working at 1:00 in the morning, and he had

21  no business reason to be sending emails between his RRD email account and these

22  personal accounts.

23       46.   Also at 1:21 a.m. the morning of January 11, 2021, Pappas forwarded to

24  one of his newly-created personal email addresses a December 16, 2020 email (sent

25  to Pappas at his RRD email address by the ■■■■■■■■■ at 12:45 p.m.)

26  describing an "upcoming mailing" that would have otherwise gone to RRD. A true

27  and correct copy of Pappas' January 11, 2021 email sent at 1:21 a.m. is attached

28  hereto as **Exhibit 9** (attaching the December 16, 2020 email thread from the

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine CA 92612
949.705.3000

Teamsters Pension Trust.).  Two minutes earlier, i.e., January 11, 2021, at 1:19 a.m., Pappas forwarded from his RRD email inbox to his personal email account earlier emails (dated December 18, 2020) between Pappas and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ about a "job" for the ▮▮▮▮▮▮▮▮▮▮▮▮.  Likewise, on January 13, 2021, Pappas received an email from ▮▮▮▮▮▮▮▮▮▮▮▮▮ another RRD client, asking whether RRD was selling certain personal protective equipment, including masks and gloves, and asking that Pappas: "Please provide quote with minimum quantity along with FDA certification."  A true and correct copy of that email sent at 11:19 a.m. is attached hereto as **Exhibit 10**.   Instead, of passing that email onto RRD, Pappas wrote back to Mr. Chin "I have some news so I'll call you."  *Id*.   Shortly, thereafter, and on January 13, 2021, Pappas gave notice to RRD that he was resigning.  To date, RRD has not received this or any other order from ▮▮▮▮▮▮▮▮▮▮▮, and on information and belief the order was instead placed with Dome Printing.  Moreover, a February 24, 2021 email that likely was inadvertently sent by ▮▮▮▮▮▮▮▮▮ to Pappas (at his RRD email address, likely the unintended result of using autofill), demonstrates that after Pappas resigned, Pappas had bid for work for RRD client ▮▮▮▮.  A true and correct copy of that email of February 24, 2021 at 1:31 a.m. is attached hereto as **Exhibit 11.**

47.     Pappas was freely sharing this information with Dome prior to joining Dome as an employee.  In addition to the November 25, 2020 email described above (Exhibit 5), on December 9, 2020 Pappas forwarded an email from the ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ seeking a bid on a "▮▮▮▮▮▮▮" to Pavlov, noting, "Here's a project coming in January.  I do this twice a year, and they are ready to move with me to Dome.  I have to get her pricing this week."  A true and correct copy of Pappas' December 9, 2020 email is attached as **Exhibit 12**.  The email confirms that Pappas was actively soliciting RRD customers to move to Dome while he was still employed by RRD, and obtaining Dome's assistance in doing so.

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

48.    Similarly, on January 4, 2021, while still employed by RRD but while *simultaneously* working for Dome, Pappas forwarded two requests for estimates to Pavlov from an RRD customer, ███████████, stating, "Can you forward this to the estimator and cc me so I can get this going. I am trying to move this monthly piece of work." A true and correct copy of this email chain is attached as **Exhibit 13**. Dome, who Pappas testified knew that he was still working for RRD at the time, did in fact provide Pappas with the requested pricing and, as a result, ████████ shifted their business to Dome. Dome has earned over $10,000 in revenue from ████ ████ since Pappas joined Dome, despite the fact that Dome had not done business with ████████ prior to Pappas joining Dome.

49.    RRD has just learned that, on January 7, 2021 (while still employed by RRD but while secretly working for Dome) Pappas uploaded a list of 683 contacts to Dome's systems. These contacts were confidential RRD customer contacts, and the list included not only contact information, but also strategic information about the customers, opportunities, and project specifications for past work done for these customers. Dome assisted Pappas in uploading this information to its systems. Attached as **Exhibit 14** is a true and correct copy of a January 7, 2021 email between Dome and Pappas attaching the contact list and discussing the uploading of the list to Dome's systems.

50.    Pappas' actions breached his duty of loyalty, his Confidentiality Agreement and other provisions of California law. Additionally, Pappas' unauthorized access and then deletion of the RRD data constitutes a crime under California Penal Code Section 502(c).

51.    As set forth in these and other emails, Dome was well aware of Pappas' misconduct and did nothing to stop Pappas from providing it with RRD's information. To the contrary, Dome gladly reaped the benefits of this information, earning business from the customers Pappas was improperly soliciting. Dome even used the information provided by Pappas to prepare bids for opportunities that had

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine, CA 92612
949.705.3000

been sent to Pappas' RRD email address.   On information and belief, Dome encouraged and assisted Pappas in acquiring and using RRD's confidential and proprietary information, and in breaching his duty of loyalty to RRD.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**Breach of Duty of Loyalty**
(Against Pappas)

52.    RRD realleges and incorporates by reference each allegation set forth in the preceding paragraphs.

53.    As an employee of RRD, Pappas owed RRD a duty of loyalty.  As a result, he was obligated to act with the utmost good faith and in the best interest of RRD.

54.    RRD was entitled to place its trust and confidence in Pappas, and was entitled to expect Pappas to act with the utmost good faith toward it in carrying out the business of RRD.

55.    RRD relied on Pappas' loyalty and integrity and faithful performance of his job duties and responsibilities.

56.    Labor Code § 2863 specifically states that "An employee who has any business to transact on his own account, similar to that entrusted to him by his employer, shall always give the preference to the business of the employer."

57.    Through the actions set forth above, including his solicitation of customers and business away from RRD *while still an RRD employee*, Defendant Pappas knowingly and willingly breached his common law duty of loyalty to RRD and violated California Labor Code § 2863.  Specifically, while still an RRD employee, Pappas diverted business opportunities away from RRD and to his new employer, Dome Printing.  Pappas also worked to undermine the relationships between RRD and its customers and employees, all in an effort to persuade RRD customers to leave RRD and give their business to Dome Printing.  Moreover, Pappas

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

diverted future opportunities away from RRD and failed to disclose those opportunities to RRD.

58.    This claim is not predicated on the misappropriation or theft of any confidential, proprietary and/or trade secret information belonging to RRD. Rather, it is predicated on Pappas' deceit and breach of his duties of loyalty.

59.    As a direct and proximate result of Pappas' breach of his duty of loyalty, RRD has been and is being harmed and faces irreparable injury.

60.    RRD is entitled to damages, in an amount to be determined at trial, as well as disgorgement by Pappas of the salary, benefits and other forms of remuneration paid to him during the time that he was, in secret, being disloyal to RRD, and all profits he and/or his new employer received as a result of his disloyalty, in an amount to be determined at trial. RRD is further entitled to injunctive relief against Pappas to remedy his past improper conduct and prevent further irreparable harm to RRD.

61.    Pappas actions were done with malice, fraud, oppression, and reckless disregard of the above described rights of RRD and within the meaning of California Civil Code § 3294. Therefore, RRD seeks and is entitled to recover punitive damages from Pappas.

## SECOND CAUSE OF ACTION
### Aiding and Abetting Breach of the Duty of Loyalty
(Against Dome)

62.    RRD realleges and incorporates by reference each allegation set forth in the preceding paragraphs.

63.    Defendant Dome provided substantial assistance, support, and encouragement to Pappas in breaching his duty of loyalty, as described above, including by working with Pappas to transfer RRD's customers and opportunities to Dome while Pappas was still employed by RRD. Dome engaged in this bad conduct

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine CA 92612
949.705.3000

20

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

with full knowledge that Pappas was still employed by RRD and therefore owed a duty of loyalty to RRD.

64.    Further, RRD alleges on information and belief that Dome accepted the benefits of Pappas' misconduct with full knowledge that the acts were wrongful.

65.    This claim is not predicated on the misappropriation or theft of any confidential, proprietary, and/or trade secret information belonging to RRD, and is instead predicated on the independently wrongful actions described above.

66.    The conduct of Dome was a substantial factor in causing the harm suffered by RRD as a result of the breaches described herein.

67.    Dome's actions were done with malice, fraud, oppression, and reckless disregard of the above-described rights of RRD and within the meaning of California Civil Code § 3294.  Therefore, RRD is entitled to recover punitive damages from Dome.

## THIRD CAUSE OF ACTION
**Trade Secret Misappropriation Under California's Uniform Trade Secret Act (Cal. Civ. Code § 3426 *et seq.*)**
(Against All Defendants)

68.    RRD realleges and incorporates by reference each allegation in the preceding paragraphs.

69.    RRD owns and possesses trade secret information as set forth above in Paragraphs 19-23, including documents containing confidential and valuable information regarding RRD's pricing, strategies, and its customers.

70.    These trade secrets were created by RRD at significant expense and developed over the course of many years.

71.    RRD's trade secret information is highly valuable, and RRD will suffer irreparable harm from the use and disclosure of its information, including loss of business and loss of competitive advantage.

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

72. RRD has taken reasonable steps to protect the secrecy of its trade secrets, as set forth above.

73. Defendants misappropriated RRD's confidential information in the improper and unlawful manner described above, including Pappas' wrongful transfer of those documents off of RRD's secured systems, disclosure of that information to Dome, and use of that information by Defendants to usurp and attempt to usurp business from RRD.

74. Pappas had no legitimate business reason to take these documents or share them with Dome.

75. On information and belief, Defendants have and will continue to misappropriate, disclose, and use for his benefit and the benefit of his new employer, Dome, and to RRD's detriment, RRD's trade secret information unless he is enjoined from doing so.

76. Because RRD's remedy at law is inadequate and it will suffer irreparable harm, RRD seeks—in addition to damages—a preliminary injunction and a permanent injunction to protect its confidential and trade secret information and legitimate business interests. RRD will continue to suffer irreparable harm absent injunctive relief.

77. Defendants' misappropriation of RRD's trade secret information has caused and will continue to cause RRD substantial injury, including but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets. Defendants have also been unjustly enriched by his misappropriation of RRD' trade secrets.

78. Defendants' misappropriation of RRD's trade secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive, within the meaning of California Civil Code Section 3294. RRD seeks and is entitled to damages, in an amount to be determined at trial, as well as injunctive relief, and an award of

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine CA 92612
949.705.3000

22

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

exemplary and/or treble damages and attorney's fees pursuant to California Civil Code, Sections 3426.3(c) and 3426.4.

## FOURTH CAUSE OF ACTION
### Misappropriation Under the Defend Trade Secrets Act
### (18 U.S.C. § 1836 *et seq.*)
(Against All Defendants)

79.    RRD realleges and incorporates by reference each allegation set forth in the preceding paragraphs.

80.    RRD owns and possesses trade secret information as set forth above, including documents containing confidential and valuable information regarding RRD's pricing, strategies, and its customers.

81.    These trade secrets were created by RRD at significant expense and developed over the course of many years.

82.    RRD's trade secret information is highly valuable, and RRD will suffer irreparable harm from the use and disclosure of its information, including loss of business and loss of competitive advantage.

83.    RRD has taken reasonable steps to protect the secrecy of its trade secrets, as set forth above.

84.    Pappas misappropriated RRD's confidential information in the improper and unlawful manner described above.

85.    Defendants misappropriated RRD's confidential information in the improper and unlawful manner described above, including Pappas' wrongful transfer of those documents off of RRD's secured systems, disclosure of that information to Dome, and use of that information by Defendants to usurp and attempt to usurp business from RRD.

86.    Pappas had no legitimate business reason to take these documents or share them with Dome.

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine CA 92612
949.705.3000

23

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

87.    On information and belief, Defendants have and will continue to misappropriate, disclose, and use for his benefit and the benefit of his new employer, Dome, and to RRD's detriment, RRD's trade secret information unless he is enjoined from doing so.

88.    Because RRD's remedy at law is inadequate and it will suffer irreparable harm, RRD seeks—in addition to damages—a preliminary injunction and a permanent injunction to protect its confidential and trade secret information and legitimate business interests.  RRD will continue to suffer irreparable harm absent injunctive relief.

89.    Defendants' misappropriation of RRD's trade secret information has caused and will continue to cause RRD substantial injury, including but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets.    Defendants have also been unjustly enriched by his misappropriation of RRD's trade secrets.

90.    Defendants' misappropriation of RRD's trade secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive.  Pappas misappropriated RRD's trade secrets intentionally and knowingly and with a deliberate intent to benefit himself and injure RRD.  RRD is entitled to damages, in an amount to be determined at trial, as well as injunctive relief, and an award of punitive and attorney's fees pursuant to the DTSA.

**FIFTH CAUSE OF ACTION**
**Breach of Contract**
(Against Pappas)

91.    RRD realleges and incorporates by reference each allegation set forth in the preceding paragraphs.

92.    As a condition of his employment with RRD, Pappas signed the Confidentiality Agreement.  The Confidentiality Agreement is a valid and binding agreement between Pappas and RRD.

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

24

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

93.     Pappas breached Paragraphs 8 and 9 of his Confidentiality Agreement by improperly taking RRD's confidential/proprietary information.

94.     Pappas' performance of these contractual provisions was not excused, and RRD had performed all duties under the Confidentiality Agreement that it was required to perform.

95.     As a direct and proximate result of Pappas' breaches, RRD has suffered damage, in an amount to be proven at trial.  Further, RRD will continue to be directly and proximately damaged and irreparably harmed if Pappas is not enjoined from further violation of his contractual obligations to RRD.  RRD does not have an adequate remedy at law and will not be fully compensated for Pappas' breaches without injunctive relief.

## SIXTH CAUSE OF ACTION
### Computer Crimes in Violation of California Penal Code § 502(c)
(Against All Defendants)

96.     RRD realleges and incorporates by reference each allegation set forth in the preceding paragraphs.

97.     Pappas violated California Penal Code Section 502 by unlawfully accessing, downloading and then deleting information from RRD's secured systems and accounts, including its Google Drive account.

98.     A person violates Penal Code Section 502(c) if he or she:

> a.   "Knowingly accesses and without permission alters, damages, deletes, [or] destroys … any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data…."; and

> b.   "Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

<u>computer</u>, computer system, or computer network." (Underlining added for emphasis.)

99.    Penal Code § 502(c) also prohibits the unauthorized use or access of any computer, computer system, or network.  Cal. Penal Code §§ 502(c)(3), 502(c)(7).

100.    The actions taken by Pappas, as alleged above, were not authorized by RRD and do not fall within the so-called scope of employment exception set forth in Section 502(h).

101.    Pappas was acting solely for his personal benefit and the benefit of his new employer Dome, a competitor of RRD, and against the best interests of RRD when he committed this misconduct.  Dome assisted and encouraged Pappas in committing the misconduct identified above, and Pappas was acting for the benefit of Dome when he committed that misconduct.

102.    This claim is not predicated on the misappropriation or theft of any confidential, proprietary and/or trade secret information belonging to RRD, but rather on the independently improper actions described above, including Pappas' deletion of information off of RRD's computer systems.

103.    As a consequence, Defendants' have been unjustly enriched, RRD has been harmed, and RRD has sustained damages in an amount to be proven at trial. Defendants' acts and conduct that constitute the commission of these computer crimes were carried out willfully, fraudulently, maliciously, and with a wanton disregard of RRD's rights, thereby entitling RRD to punitive damages to be proven at trial.

104.    RRD also has suffered irreparable harm as a result of Defendants' activities and will continue to suffer irreparable injury that cannot be adequately remedied at law unless Pappas is enjoined from engaging in any further such acts.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff RRD prays for judgment in its favor and against Defendants, as follows:

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine CA  92612
949.705.3000

26

1.  For compensatory damages, according to proof;

2.  For exemplary and punitive damages, including damages and/or reasonable royalty awardable under the UTSA Section 3426.3 and 18 U.S.C. § 1836(b)(3)(A)(iii) according to proof;

3.  For injunctive relief;

4.  For restitution and/or disgorgement of profits;

5.  For attorney fees under Penal Code Section 502(c)(e)(2) and pursuant to Cal. Civ. Code Section 3426.4 and 18 U.S.C. § 1836;

6.  For costs of suit incurred herein;

7.  For a trial by jury; and

8.  For such other and further relief as the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury of all causes of action so triable.

Dated:    October 18, 2021

LITTLER MENDELSON P.C.


*/s/Mark A. Romeo*
Mark A. Romeo
Derek S. Hecht

Attorneys for Plaintiff
R. R. DONNELLEY & SONS
COMPANY

LITTLER MENDELSON P.C.
Attorneys at Law
18565 Jamboree Road
Suite 800
Irvine  CA  92612
949.705.3000

27

FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF

# Exhibit 1

Personnel File Copy

# CONSOLIDATED GRAPHICS

## CONFIDENTIALITY AGREEMENT

In consideration of my employment and/or continued employment by Consolidated Graphics, Inc. (hereinafter "the Company", a term which includes its subsidiaries, affiliates, successors and assigns), and in consideration of the compensation paid to me throughout my employment with the Company, I agree that:

1. I will disclose promptly to the Company all inventions made or conceived by me, either solely or in collaboration with others during my employment (a) which relate to the present or anticipated business, research, developments, tests, products, work or activities of the Company, or (b) which result from or are suggested by any work I may do for the Company, or (c) that are otherwise made through the use of Company time, facilities or materials.

2. I will make and maintain for the Company adequate and current written records of all such inventions or innovations.

3. Every such invention shall be and will remain the sole and exclusive property of the Company, whether patented or not, and every such invention conceived within six months after termination of my employment shall be presumed to be the property of the Company, subject to proof that it was first conceived after termination of my employment.

4. The term "invention" as used throughout this Agreement includes any invention, discovery, improvement, design, machine, device, apparatus, composition, process, plans or programs, whether or not patentable and whether or not conceived during my working hours.

5. I will assist the Company and its nominees, agents and attorneys, both during and subsequent to my employment, in every reasonable way (entirely at its or their expense) in taking all actions requested by or for them to obtain patents, copyrights on such inventions in any and all countries of the world and to protect, enforce, assert or maintain such patents and copyrights, and I will execute, acknowledge and deliver any and all documents and instruments requested by it or them for such purpose including assignments for vesting title thereto to the Company.

6. I have no agreement, claim, obligation or invention rights which may be in conflict with any obligation I have undertaken under this agreement, except as specifically identified as follows:
   (If none, write "None"; if additional space is needed, attach an additional page)

   *None*

7. The term "proprietary or confidential information" includes, but is not limited to, all commercial data relating to the business and products of the Company, including: a) the identity of customers and customer contacts; b) employee lists and compensation levels; c) specifications regarding Company products (including inventions, formulas, machinery and equipment, use of raw materials); d) pricing and marketing/business strategies; e) details regarding manufacturing processes and techniques; f) Company financial information and business plans; and, g) any information ancillary to the subjects noted above.

8. Except as my assigned duties may require or as the Company may otherwise consent in writing, I will not disclose at any time—either during my work for the Company or subsequent to my employment—any proprietary or confidential information, knowledge of any invention, or any other data relating to the Company's business, products or operations which I have developed or received during the course of my

employment. I agree that upon termination of my employment with the Company (whether voluntary or involuntary), within one week of the termination I will promptly return all items of tangible personal property belonging to the Company—as well as all documents and data relating to the Company's operations—that are in my possession. This obligation extends to "hard copies" of documents, as well as all computer files (including items maintained on computer hard drives and computer disks).

9. I agree that any violation or threatened violation of this agreement shall cause irreparable damage to the Company's legitimate business interests. Accordingly, I agree that the Company shall be entitled—in addition to damages and other remedies available at law or equity (including recovery of its attorneys' fees)—to an injunction that prohibits me from committing or threatening to commit any such violation.

10. These provisions contain the entire agreement and understanding between me and the Company concerning the matters they describe. I recognize and acknowledge that this agreement does not alter in any way the "at will" nature of my employment relationship with the Company, nor does this constitute an express or implied agreement relating in any way to the length of my employment with the Company.

I HAVE READ THIS AGREEMENT, RECOGNIZE THAT IT CARRIES LEGAL SIGNIFICANCE AND HAVE OBTAINED COUNSEL CONCERNING THIS MATTER AS I FEEL APPROPRIATE. I ALSO ACKNOWLEDGE RECEIPT OF A COPY OF THIS AGREEMENT.

_____
Employee's Signature

May 15, 2003
_____
Date

# Exhibit 2

**R.R. DONNELLEY**
**Company Policy**

| | |
|---|---|
| **Title:** | Electronic Information and Systems Use Policy |
| **Policy No.:** | ICI-IT-608 |
| **Department:** | IT Governance & Administration |
| **Supersedes:** | Electronic Communications Policy 9/24/2012 |
| **Date:** | August 5, 2013 |
| **Authorization:** | Chief Information Officer |

**Purpose:**

The RR Donnelley Electronic Information and Systems Use Policy establishes guidelines for the appropriate use of company information assets.

**Applicability:**

Employees of all domestic and international RR Donnelley companies, locations, departments, divisions and wholly owned, majority owned, or controlled subsidiaries.

**Policy:**

RR Donnelley's electronic communications system is intended to facilitate company business. It is an invaluable business tool that helps us compete in the marketplace and communicate with each other. All employees should familiarize themselves with this policy so that they can utilize RR Donnelley's electronic communications system in a responsible manner.

**Procedures:**

For purposes of this policy, the term "Electronic Communications System" refers to all computers, computer systems, voice mail, electronic messaging systems or services, document collaboration system or services, online application services, network, intranet or Internet access system owned, leased, contracted, operated, maintained or managed by RR Donnelley. All messages, files and other data created, uploaded, downloaded, sent, received, or stored on or through any of these systems are also covered by the RR Donnelley Electronic Communications Policy.

1. **Usage**

    The Electronic Communications System is the property of RR Donnelley and any misuse of it can result in disciplinary action, including termination. Primary usage of RR Donnelley's electronic communications system should be limited to business related purposes. Incidental personal use is permissible if the use is lawful and ethical, does not consume more than a trivial amount of resources that could otherwise be used for business purposes, does not interfere with worker productivity and does not preempt any business activity. While RR Donnelley allows its

Please note: The policies online are the most up to date. If you have a printed copy, the HR Policy is not guaranteed to be current. Please refer to the intranet "inside.RRD.net" or HR Xpress or contact your HR department for current policy information.

employees limited personal use of the Electronic Communications System, use of the Electronic Communications System for reasons adverse to the Company is expressly prohibited. Accordingly, an employee immediately forfeits his or her right to access the Electronic Communications System when such access is for reasons adverse to the Company's interests, irrespective of whether the employee was in the employ of RR Donnelley when the unauthorized access occurred, or was acting during non-work hours, or on non-work-related activities. For purposes of this policy, conduct deemed to be adverse to the Company's interests includes, but is not limited to, activities described in Section 6, below.

## 2. No Expectation of Privacy/Right to Monitor

RR Donnelley reserves the right to monitor, access, retrieve and read all messages and content, and to disclose any message to law enforcement officials or other third parties, without any prior notice to the originator or recipient of the message. Additionally, supervisors and managers may review messages to and from employees they supervise or manage. Employees should have no expectation of privacy with regard to anything sent, posted, received or accessed through the Electronic Communications System.

## 3. Recordings

Because of their relatively insecure nature, sensitive or confidential information should not be recorded or left as a message on an answering machine or voice mail system. All participants must be notified in advance whenever a conversation is being recorded. Employees must contact the general counsel's office to obtain prior authorization before requesting to record a conversation.

## 4. Content

Employees should be sure that files they transmit to others are free of viruses and other malicious code. Email, instant messaging or other general messaging services are not to be used for either internal or external transfers of confidential customer data (either as attachments or in the content of an email) without explicit written direction from a customer. Where customer requires the transfer of confidential data in such a manner, Employees should employ approved technical measures to encrypt the data before inclusion in or attachment to a message. Employees are strictly prohibited from transferring unencrypted data that is subject to privacy regulations through common messaging services, unless they have received approval from the Chief Information Security Officer, even if requested by a customer.

Please note: The policies online are the most up to date. If you have a printed copy, the HR Policy is not guaranteed to be current. Please refer to the intranet "inside.RRD.net" or HR Xpress or contact your HR department for current policy information.

Page 2 of 4 (CID 2749)

**5. Prohibitions**

Employees may not:

- Copy, transmit, or use any copyrighted material, trade secret, confidential, or proprietary information belonging to RR Donnelley or its clients (actual or prospective), unless doing so as part of an authorized business purpose.

- Store RR Donnelley email or proprietary content or conduct RR Donnelley business on any third party or personal email, collaboration, social media or storage service or device unless the service is provided under an approved contract with RR Donnelley or required under a contractual obligation with an RR Donnelley customer.

- Send email solicitations or chain mail, or establish websites using any the Electronic Communications System for other than an authorized business purpose.

- Forge or attempt to forge messages, or disguise or attempt to disguise Employee's identity when sending messages.

- Add any email signature content other than Employee's contact information and the following "recipient disclaimer" statement.  Employees' contact information includes his/her name, job title, company name, phone, cell phone, fax, mailing address, and email address.

  *The information contained in this email message is intended for the named recipients only. It may contain confidential information. If you are not the intended recipient of this message, you may not disclose, use, print, copy or disseminate this information. If you have received this in error, please reply to and notify the sender (only) and delete this message. [In the U.S. only, add: "Unauthorized interception of this email is a violation of federal criminal law."]*

  Use of any other "recipient disclaimer" statement must be approved by the RR Donnelley Legal Department.

- Send or post messages that contain content that may reasonably be considered offensive, disruptive, defamatory, or derogatory, including but not limited to sexual comments or images, racial slurs, or other comments or images that would offend someone on the basis of his or her race, national origin, gender, age, sexual orientation, religious or political beliefs, or disability.

- Send or post messages that harass, threaten, discriminate against or disparage employees or anyone associated with or doing business with RR Donnelley.

- Open file attachments from unknown sources unless they have been scanned for possible viruses or malicious code.

Please note: The policies online are the most up to date. If you have a printed copy, the HR Policy is not guaranteed to be current. Please refer to the intranet "inside.RRD.net" or HR Xpress or contact your HR department for current policy information.

Page 3 of 4 (CID 2749)

- Use the Electronic Communications System to access, post, download, or transmit material which is inappropriate, offensive, illegal, or which jeopardizes security.

- Use the Electronic Communications System in any way that violates RR Donnelley's Principles of Ethical Business Conduct, HR Core Policies, or any other company policy or practice.

- Install any software on an RR Donnelley computer or server that is not approved for use on RR Donnelley systems, procured and licensed in any manner other than through applicable RR Donnelley software purchasing policies (including ASOP-0020), and used in a manner not compliant with copyright laws or manufacturers' terms of use.  A list of software approved for use on general user workstations/laptops is available in the ISR service catalog Procure or use 3rd party online services for RR Donnelley business purposes except where a) the use of the service has been approved by management at a VP level or above, b) the service has been certified by Corporate IT Governance as compliant with RR Donnelley information security requirements, and c) the service has been procured through appropriate IT contracting processes.  Contact IT Governance for guidance on requesting approval for the use of a 3rd party online service.

### 6.  General Guidance

a.  Employees must be aware that emails, instant messages and other online postings are retained for extended periods and such messages are routinely the focus of litigation discovery and investigations.  Therefore, employees must avoid writing messages that could result in liability or embarrassment for the company.

b.  No employee should assume that any electronic communication is private. Messages that appear to be secure often are not.  Employees should assume that messages might be heard or read by someone other than the intended recipient.  Messages that appear to be deleted from electronic communications systems are often backed-up elsewhere and may be retrieved.

c.  All messages must use language and standards consistent with other forms of business communication.

d.  Employees should always proof content and review it for language, tone and substance that might be misinterpreted or create unintended responses.

For assistance with any of the technical requirements in this policy, please contact the RR Donnelley Help Desk 1-800-773-4357 (1-800-RRD-HELP).

Please note: The policies online are the most up to date. If you have a printed copy, the HR Policy is not guaranteed to be current. Please refer to the intranet "inside.RRD.net" or HR Xpress or contact your HR department for current policy information.

# Exhibit 3

# R.R. DONNELLEY & SONS COMPANY

## Company Policy

| | | | |
|---|---|---|---|
| Title: | Policy on Confidential Information, Customer Information and Taking of Customer Property | Policy Number: | ICI-LG-704 |
| Department: | Legal | Supersedes: | July 2004 |
| Date: | May 2014 | Authorization: | General Counsel |

**Purpose**:

This policy governs the use of confidential and proprietary information of the Company and third parties, including customers and suppliers and sets forth the prohibition against the taking of customer property.

**Policy**:

Each of us in the course of performing our job may be exposed to information that is either confidential or proprietary to the Company or to a third party, such as a customer or vendor. No employee, director or other person learning of confidential or proprietary information in his or her work for the Company may use this information for anything other than the performance of his or her job, and may never use this information for personal gain.

"Confidential Information" means information that has not been made available generally to the public by its owner (the Company, a customer, or a vendor) or information that has been identified as confidential by the Company or has been maintained as confidential from outside parties and is recognized as intended for internal disclosure only.

In addition, furnished raw materials, in process goods, rejected and /or finished goods are customer or Company property. Employees may not remove products, whether finished, in process, or rejected, from any Company facility, except for authorized business with the customer, nor may employees use such products, goods or customer or Company property for any purpose other than the performance of their jobs.

**Applicability**:

All domestic and international RR Donnelley departments, divisions and wholly owned, majority owned, or controlled subsidiaries.

**Procedures**:

A.  *Company Confidential Information*

1.  As a general rule, information which is confidential or proprietary to the Company should be shared only with other employees who are involved in or necessary to the matter or project to which the information relates (have a "*need to know*"), and with only those third parties who have executed confidentiality agreements with the Company or who, by the nature of their professions and engagement, have an obligation of confidentiality to the Company (such as accountants and attorneys). Company confidential information includes (but is not limited to) information regarding acquisitions, joint ventures and investments under consideration; restructurings; new products or services under development; financial results or projections not yet public, including information relating to undeclared dividends; new contracts for the sale of services or purchase of equipment or materials; management changes; securities offerings, stock splits or other changes in capitalization under consideration; changes in senior management; changes in auditors; personal information; or medical information about employees or former employees.  While we are all employees of the Company, it is important to remember that not all of us have or need access to confidential information to do our jobs.  Discussions held in the cafeteria, in the elevators or in social settings may result in unnecessary or inadvisable disclosures in violation of our policies.

2.  Similarly, Company information should <u>not</u> be disseminated to third parties through responses to customer inquiries or general information requests or the completion of surveys, unless the information sought is generally available to the public.  Should a customer or prospect require the Company to complete a survey or information request including anything other than public information in order to become a qualified bidder, please check with the Legal Department to assure that a satisfactory confidentiality agreement can be executed prior to disclosing confidential information.

B.  *Disclosures of Company Confidential Information*

1.  No employee may ever discuss or otherwise disclose material, nonpublic Company information to any person outside the Company except in accordance with pre-approved procedures described in this Policy, the <u>*Investor Relations Disclosure Policy*</u> or under an approved non-disclosure or confidentiality agreement.  In addition, the Securities and Exchange Commission and Nasdaq Stock Market impose special requirements regarding disclosure of Company information to financial analysts, investment bankers, brokers, shareholders and perspective investors.  The only employees authorized to discuss <u>any</u> Company matters with these persons are the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, Head of Investor Relations and designated members of the Corporate Communications staff.

2.  Earnings and earnings estimates should <u>never</u> be discussed with third parties unless such discussions are held in compliance with written policies established by the Chief Financial Officer or the Head of Investor Relations.

3.  If a securities industry professional, Company shareholder, government official or member of any media contacts you seeking information, comments or opinions, you should direct them to Investor Relations.

C.  *Customer Confidential Information and Customer Property.*

1.  <u>Information</u>. It is imperative that our customers' material in our possession be treated with the utmost regard for its confidentiality, including when RR Donnelley is the customer.  This includes the content of as yet unpublished material (whether in electronic, digital or printed form) as well as counts, schedule and plans of our customers or prospects for new or altered distribution, marketing or products.  This includes controlling advance copies of material as well as content in production.  Our practices apply equally to our Business Units, and our legal risk and risk to our reputation relates to all of our businesses.

2.  <u>Property</u>. Raw materials, in-process goods and finished product (even if rejected by a customer) are the property of either the Company or its customers.   Employees may not remove these from any Company facility, except for authorized business with the customer. nor may employees use such materials, goods or products for any purpose other than the performance of their jobs.

D.  *Consumer Privacy*

We receive information and data regarding consumers in connection with services we provide to customers.  It is our policy to comply with all laws and regulations in effect that govern the use and publication of consumer data.  All consumer information must be treated as strictly confidential.

E.  *Third Party Confidential Information*

1.  From time to time, a third party furnishes information to the Company which it considers confidential or proprietary.  This could include information received from a supplier relating to a new service or product, information from a developer of software, or information regarding a competitor or other third party that might be selling its assets or business.  Typically, information of these types is not furnished to the Company without the Company entering into a confidentiality agreement covering its use and return, and typically these agreements (*i*) limit the number or role of the Company employees entitled to review the data, (*ii*) limit the uses to which the information can be put, and (*iii*) require the control (including limitations on copying) and ultimate return or destruction of the information.  There may be other provisions specific to a particular confidentiality agreement as well, such as a restriction on hiring employees of the company that is disclosing confidential information in a business sale situation.  If any Company employee receives information subject to an executed confidentiality agreement, he or she is bound by and must adhere to the agreement.  It is advisable that in distributing any confidential information which is subject to a confidentiality agreement, it be noted that the material is subject to terms and conditions limiting its reproduction, use and further distribution so as to make everyone aware of their obligations.

2.  In some cases, particularly with possible acquisitions and joint ventures, the very fact that the Company is in discussions with the other company is considered

confidential information.  It is imperative that this information be kept confidential and on a "need to know" basis.

F.  *Insider Trading*

1.  The general rule is that "*insiders*" who know important information about the Company, its customers, or others, which is not generally known to the public, should not take advantage of such information by (*a*) trading in securities (publicly listed stock and debt securities or publicly traded options on the foregoing) issued by the Company, its customers or others, or (*b*) aiding others to trade in such securities.

**2.**  An insider may not buy or sell securities on the basis of material information which has not been disclosed to the public.  An employee of the Company may become an "*insider*" of a customer, supplier or other entity having a special relationship to the Company because such individual has obtained, through his or her employment with the Company or in serving as a Director of the Company, confidential information about such customers, suppliers or others.  For more information on insider trading and trading in Company securities, see the *Insider-Trading and Window Period Policy*. http://inside.rrd.net/insideRRD/_documents/employee_center/human_resources/ policies/legal/insider_trading_and_window_period_policy.pdf**.**

3.  Insider trading laws restrict trading in the securities of companies which are or have been reviewed by the Company as acquisition, joint venture or investment candidates, which are being considered for significant contractual relationships, or which have revealed to our Company plans for acquisitions, financings or other transactions that may be undisclosed material information of those companies.  This could include customers, suppliers, business partners and other third parties.

G.  *Securing Confidential Information.*

Each Company facility, whether a sales, production or administrative location, is responsible for developing and implementing detailed security procedures appropriate to the type and sensitivity of the confidential information it handles.  In general, the following procedures will be observed:

*Lockable Facilities.*  Facilities which handle confidential information shall provide secure, lockable facilities.  When not in use, the information shall be stored in locked areas.  Access to such areas shall be restricted to authorized personnel.

*Restricted Areas.*  At times, it will be appropriate to establish restricted areas at certain Company facilities, such as places where software is being developed, equipment modifications are being made or tested, a special job is being handled for a customer, or sweepstakes or coupons are being produced or compiled.  These areas should be kept off-limits to unauthorized employees and  visitors.

*Removal.*  Confidential information may not be taken from a Company facility, except when necessary to conduct authorized business with a customer, vendor or other business partner.

*Data Security*.  Confidential information that is stored electronically shall be secured as required by RR Donnelley's Information Security Policy and Electronic Communications and System Use Policy.

*Visitors*.  Visitors to Company facilities (including employees from other locations) shall register with the reception desk and wear a visitor's badge or pass.  Visitors who are not Company employees must be escorted by a Company employee at all times while on Company premises.

*Secure Disposal*.  Subject to the terms of any agreement we may have entered into, confidential information that is no longer needed shall be destroyed in a secure manner or returned to the customer, vendor or business partner that supplied it to us.

# Exhibit 4



Principles of
# Ethical Business Conduct

At RRD, our Principles of Ethical Business Conduct not only convey the expectations of each and every employee, director, vendor and supplier to adhere to our worldwide code of conduct, but also capture the ethics, integrity and compliance that are absolutely core to our values and our culture. Over the course of our history, we have built a strong reputation with our clients, suppliers, partners and communities around the world. Our strong reputation was built through the individual actions of thousands of employees who have committed to operating ethically, regardless of the situation or circumstance, for more than 150 years.

While the business environment in which we operate is ever-changing, RRD's commitment to our core values remains steadfast. For this reason, it is essential that each of us not only read the Company's Principles of Ethical Business Conduct, but to ensure that these Principles are guiding our decisions each and every day. This is true regardless of your role or position within our Company. It is through our personal commitment and collective actions that we maintain a strong, compliant and ethical culture and uphold our industry reputation.

Thank you for your commitment to RRD. If you have any questions regarding the Principles outlined in this document, please consult with your supervisor, manager, or a member of the Human Resources or Legal Department.

**Daniel Knotts**
President & Chief Executive Officer

integrity.
noun /in- te-gra-tē/

A concept of consistency of actions, values, methods, measures, principles, expectations, and outcomes.

Principles of Ethical Business Conduct

Principles of Ethical Business Conduct

# INDEX

| | |
|---|---|
| Introduction | 6 |
| Ethical and Lawful Behavior | 8-12 |
| Conflicts of Interest | 13-20 |
|    General – Consent and Disclosure | 13 |
|    Dealings with Outside Companies | 14 |
|    Abuses of Business Opportunities and Confidential Information | 17 |
|    Civic, Charitable, Governmental and Professional Activities | 19 |
|    Existing Conflicts and Changes in Circumstance | 19 |
|    Resulting in Conflicts; Compliance | |
|    Prohibition of Gifts | 20 |
| Competing Fairly and Complying with Antitrust Laws | 22-25 |
| Environmental Laws | 26-27 |
| Employee Safety and Health Laws | 28-29 |
| Employee Working Conditions – No Child or Forced Labor | 30 |
| Discrimination | 31 |
| Governments and Government Agencies | 32-33 |
| Anti-Corruption Laws Including the Foreign Corrupt Practices Act | 33-35 |
| Securities Laws and Confidential Information | 36-37 |
| Computer Systems | 38-40 |
| Government Investigations and Information Requests | 40-41 |
| Monitoring and Reporting of Violations | 42 |
| Ethics Hotline International Telephone Numbers | 43 |



6

Our Vendor and Supplier Code of Conduct sets out RRD's principles and expectations for organizations who supply goods and services to RRD, including their representatives, agents and employees. All vendors and suppliers are to conduct business with RRD in a way that is consistent with our company values and the Principles of Ethical Business Conduct that are outlined in this guide.

Principles of Ethical Business Conduct

## INTRODUCTION.

RRD has principles of conduct to ensure its business is conducted with integrity and in compliance with the law. Every employee, whether in the United States or in another country, and every member of the Board of Directors is expected to understand and follow the policies outlined here. For ease of reading, the term "employee" includes officers and will be deemed, for this policy's purposes only, to include the members of the Board of Directors.

Violating the law could subject RRD and the individuals involved to criminal proceedings, regulatory action and lawsuits. Any employee who violates these policies is subject to disciplinary action, up to and including termination.

Employees who violate the law can be penalized and may be subject to substantial fines, significant prison terms and repayment of any funds related to the underlying violation.

For the company, violating the law can mean sizeable fines and penalties, the loss of important clients and disqualification from contracting on government work.

RRD requires training of certain employee groups on several substantive areas of Ethics and Compliance. It is the employee's obligation to complete the training and act in accordance with that training.

We have audit procedures designed to detect unethical or illegal practices.

However, if you become aware of an ethical or legal violation, including violation of these policies, you have an obligation to report it to the company as described under "Monitoring and Reporting of Violations."

The Chief Compliance Officer must approve any waiver of this policy, in writing. Waivers of this policy may also require approval of the Board of Directors (or a designated committee) and will be disclosed to the extent required by applicable law or regulation.

**If you are unsure whether a particular situation or activity amounts to a violation of law or a violation of a company policy, review the applicable company policy (available on the intranet), and if you still have questions, consult with your supervisor or manager, the Chief Compliance Officer or other member of the Legal Department before doing anything.**



Each employee in every country must act with integrity and in compliance with all applicable laws.

Principles of Ethical Business Conduct

# ethical.

adjective/ˈe-thi-kəl/

pertaining to or dealing with morals or the principles of morality; pertaining to right and wrong in conduct.

**"**

We must deal with our suppliers, clients, employees, competitors and the public fairly and honestly, while protecting company and third-party business information.

Ensure that wherever your physical workspace is located you maintain hours, productivity, meet your departments SLA's, complete projects as expected and report all work time in line with RRD policy. An employee must be as productive in a remote work location as he/she would have been had the employee been working in an RRD office. Remote work does not lessen or affect employee's level of responsibility or workload, and no other employee should be impacted by the remote employee's work arrangement.

Principles of Ethical Business Conduct

7

## ETHICAL AND LAWFUL BEHAVIOR

The success of our company rests on its employees. Because of their efforts and dedication, the company has earned a reputation for providing top-quality printing and related services in an honest, ethical fashion. We are proud of this reputation, and we must work together to preserve it.

This means that we must conduct our business honestly, ethically and in strict compliance with all laws, rules and regulations. It also means that we must operate free of any interest that affects our undivided loyalty to RRD.

It takes only one unethical or unlawful act to destroy the goodwill the company has earned from suppliers, clients and the public. While it is impossible to catalog every situation that might arise, the following general principles are important:

Deal with suppliers, clients, employees and competitors on a fair and honest basis. Buying and selling must be done on an "arm's length" basis, free of any conflicts of interest, kickbacks, bribes, secret commissions, gifts or favors. Do not take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or other unfair dealings.

Avoid any situation in which your independent business judgment might appear to be compromised. Charges of bad faith and misdealing may arise in any situation where your personal interests and the company's interests are not the same. For this reason, employees should not have a financial interest in clients, suppliers or competitors of the company (unless such interest complies with the company's conflicts of interest policy, contained herein). Employees also may not work for a client, supplier or competitor without prior management approval.

Make candid reports to management. Among other things, this requires that reports contain accurate information and that accounting records be properly maintained in accordance with generally accepted accounting principles. It also means that employees must fully and frankly disclose to management anything that might affect the company's reputation.

Principles of Ethical Business Conduct

8

10

- Protect proprietary and/or confidential information. In dealings outside of work, be careful not to divulge important information about the company, its clients, employees, or its business, even accidentally. Examples of information that should not be disclosed:

  - production processes and equipment;

  - undisclosed financial results;

  - contract terms;

  - prices;

  - information disclosed to the company by clients, suppliers or any other firm with which we do business;

  - the content of any material the company is handling prior to its public distribution and copies of any such material;

  - employee information covered by privacy laws; and

  - proposed acquisitions or sales by the company.

- All employees should protect the company's assets and ensure their efficient use. Theft, carelessness and waste have a direct impact on the company's profitability. All company assets should be used for legitimate business purposes.

- If you leave the company, your obligation to protect proprietary information continues. You must not share company confidential information with your new employer or anyone else. You may also be prohibited from competing for a certain time period or from soliciting, directly or indirectly, employees of the company to leave to join your new employer, and clients of the company from taking their work elsewhere.

Principles of Ethical Business Conduct



protect.

Principles of Ethical Business Conduct

9



## CONFLICTS OF INTEREST

### General – Consent and Disclosure

No employee of RRD or its subsidiary companies should have any business, financial, civic, governmental or professional interest outside of RRD that in any way conflicts with, or appears to conflict with, such employee's ability to perform his or her duties at the company with undivided loyalty, without the express written consent of the Chief Compliance Officer. In the event any such conflict has been consented to as provided in this policy, the affected employee must advise all appropriate members of management and, if appropriate, the Audit Committee of the Board of Directors, of any such conflict whenever relevant to business decisions at RRD in which the affected employee is involved.

- Employees are prohibited from taking client or company property, including furnished raw materials, in process goods, rejected and/or finished goods, from any RRD facility, except for authorized business with the client.

- Remember that client property is not for our use. While samples of finished products are used for certain purposes within the company, they are not for general distribution to employees or third parties.

- Do not duplicate licensed computer software; do not use trademarks that we do not own; and do not reveal trade secrets disclosed to the company. Willful infringement of a copyright or trademark is a crime.

- Keep political activities separate from the company's business. If you decide to make a political contribution (including providing services), it must be done with your personal funds and on your own time. Company stationery should not be used for personal or political purposes. If an employee is appointed to or decides to run for a governmental office, he or she should first consult with the Chief Compliance Officer to ensure a conflict of interest does not arise.

We also must maintain books and records and accounting controls for the entire company (including our operations outside of the United States) that accurately and fairly reflect our income and expenses. Our employees must follow these accounting controls, which are designed to protect not only against bribes but against the use of company assets in unauthorized ways, such as not recording or obtaining internal managerial authorization for financial transactions and maintaining improper bank accounts.

**If you are unsure whether a particular situation or activity amounts to unethical or unlawful behavior, consult with your supervisor, manager, Human Resources, the Chief Compliance Officer or other member of the Legal Department before doing anything.**

It is impossible to describe in this policy every situation that may give rise to a conflict of interest and what is set forth below are only some of the situations that may pose conflicts of interest.

Note that for purposes of this policy, a "family member" includes any child, grandchild, parent, grandparent, spouse or sibling, including step or adoptive relationships and any person sharing your household (other than a tenant or employee).

If you are unsure whether a situation poses a potential conflict of interest with RRD, you should consult with your supervisor, manager, Human Resources, the Chief Compliance Officer or other member of the Legal Department before doing anything.

## Dealings with Outside Companies

### Board Membership/Employment by an Outside Company

You may not serve as a board member of, or be employed (as an employee, a consultant or other-wise) by, a competitor, client or supplier of RRD without the express written consent of the Chief Compliance Officer. A conflict may also arise when your family member is a board member of or employed by a client or supplier that has business dealings with RRD in which you participate or are able to exert influence or any competitor.

### Financial Interests in Outside Companies

You may not allow your personal financial interests to influence, or appear to influence, your independent judgment on behalf of RRD. This could happen in many ways, but it is most likely to create an appearance of a conflict of interest if you have a personal financial interest in a client or supplier of the company and your decisions as an employee of RRD may have a business impact on this outside party or any competitor.

Principles of Ethical Business Conduct

Principles of Ethical Business Conduct

- A personal financial interest includes a personal investment held in your name individually or through a broker, or held through ownership by your family members, in their names individually or through a broker. A personal financial interest does not include an investment held through a mutual fund or a blind trust.

- You and your family members must not have personal financial interests in competitors, clients or suppliers of RRD if such interests are material and the interest would influence, or appear to influence, your independent judgment on behalf of RRD. Generally, a personal equity investment in an outside company will be deemed material if the combined value of the stock or rights to acquire stock owned by you and your family members is more than your gross annual earnings from the company or the stock owned

by you and your family members is more than five percent of the capital stock entitled to vote in the election of directors of such outside company, if the interest is not an equity investment (for example, a loan to the outside company), it will be deemed material if the investment by you and your family members on a combined basis is more than your gross annual earnings from RRD.

**Business with Outside Companies**

You may not use personal influence to get RRD to do business with a company in which your family members or friends have a personal financial or other interest. You or your family members may not act as an independent supplier of goods or services to RRD, without review and approval of the Chief Compliance Officer prior to engagement. Any such transaction, if approved, shall be conducted at "arm's length."

## Abuses of Business Opportunities and Confidential Information

You must not use for personal gain, or for the benefit of anyone or any entity outside of RRD, knowledge of business opportunities or ventures or confidential information about the company if such knowledge is gained or developed

through your employment with RRD. You may not directly or indirectly buy, or otherwise acquire, rights to any property or materials if you know that the company may be interested in pursuing such opportunity.



ask.

"

Avoid any conduct in your business or personal life that conflicts with your obligations to the company.

Principles of Ethical Business Conduct

Principles of Ethical Business Conduct

## Civic, Charitable, Governmental and Professional Activities

Employees are encouraged to participate in civic, charitable and professional activities but should be mindful of potential conflicts of interest between RRD's interests and the interests of the particular civic, charitable, governmental or professional organization. Employees must also avoid any potential conflicts of interest between their employment with RRD and their involvement in any governmental activities or programs. Should such conflicts exist or arise, you must report the conflict to the Chief Compliance Officer and refrain from participating in the activity that gives rise to the conflict, unless the Chief Compliance Officer strictly consents in writing to such activity. Any such outside activity must be strictly separated from RRD employment and should not harm job performance at RRD.

**If you are unsure whether a particular situation or activity amounts to a conflict of interest, consult with your supervisor, manager, Human Resources, the Chief Compliance Officer or other member of the Legal Department before doing anything.**

## Existing Conflicts and Changes in Circumstance Resulting in Conflicts; Compliance

If you discover, due to changed circumstances, new knowledge or otherwise, that you are involved in a conflict that violates this policy, you must report the conflict to the Chief Compliance Officer and, unless appropriate consents are obtained consistent with this policy, you must eliminate the conflict in the most expedient way possible. An employee who knowingly violates this policy, or fails to resolve an existing conflict in a manner consistent with this policy, is subject to disciplinary action, up to and including separation. RRD may from time to time request employees to confirm that they are in compliance with this policy.

**If you are unsure whether a particular situation or activity amounts to a conflict of interest, consult with your supervisor, manager, Human Resources, the Chief Compliance Officer or other member of the Legal Department before doing anything.**

Principles of Ethical Business Conduct



comply.

verb /kəmˈplī/

to act in accordance with a wish or command.

Principles of Ethical Business Conduct



## Prohibition of Gifts

Employees must not accept gifts, favors, loans, entertainment or other gratuitous services from competitors, clients or suppliers of RRD. A gift or favor would not include loans from financial institutions on customary terms, articles of nominal value ordinarily used for sales promotion or which could not be considered material enough to be a business inducement, ordinary business lunches or other reasonable entertainment where the client, vendor or supplier is in attendance consistent with local social and business custom.

**No employee may accept cash, gift cards, gift coupons or cash equivalents of any amount from any person that has business dealings with RRD.**

Under no circumstances may cash payments be made to clients. Other gifts, coupons, favors and entertainment extended to clients must be legal and reasonable. If you have questions regarding the appropriateness of any gift, favor or entertainment, you should consult with the company Gift Policy or the Legal Department. The terms of a client's gift policy must be honored by RRD without exception.

Employees in a subordinate/supervisory relationship must not exchange favors or gifts that could, or could appear to, give rise to an obligation.

Principles of Ethical Business Conduct

## COMPETING FAIRLY AND COMPLYING WITH ANTITRUST LAWS

RRD deals with suppliers, clients, employees and competitors on a fair and honest basis. Buying and selling is done on an "arm's length" basis, free from any kickbacks, bribes, secret commissions, gifts or favors. We will not take advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts, or other unfair dealings.

The antitrust laws reflect the commitment of governments to a free enterprise system. Supply and demand and vigorous competition give consumers quality services at economical prices. It is the company's policy to comply with all antitrust laws in the United States and in other countries where the company does business.

The criminal provisions of the U.S. antitrust laws prohibit any agreement between competitors regarding prices to be charged, bidding, clients to be solicited or geographic areas to be served. Examples of criminal agreements with competitors include:

- agreeing upon selling price or list price;
- exchanging bids with competitors;
- allocating territories, clients or markets;
- fixing a price range;
- setting up a rotation method of bids among competitors;
- limiting output or restricting delivery schedules; and
- fixing discounts, rebates or credit terms.



Antitrust laws require fair competition among competitors.



# antitrust.

adjective /an-tē-ˈtrəst/

of or relating to legislation preventing or controlling trusts or other monopolies, with the intention of promoting competition in business.



Such agreements may lead to criminal prosecutions of individuals and of the companies they represent. Offenses may lead to penalties for individuals consisting of fines and imprisonment.

Remember that any contact with a competitor is hazardous. Illegal agreements are often proved with evidence of "small talk," "casual discussions" and "harmless" exchanges of business information. Avoid such discussions, whether, for example, they occur in a large, formal group or in a social setting following a trade association meeting.

If a competitor raises a topic that you believe might violate the antitrust laws or our policies, you must immediately and firmly decline to discuss it. You must then promptly notify a member of the Legal Department of the event.

If another country's antitrust and competition laws are more restrictive that those of the United States, you must comply with those laws. In those instances where a country's laws are more lenient than those of the United States, you should still comply with the principles of the U.S. antitrust and competition laws unless you first consult with a member of the Legal Department.

For further details regarding the antitrust laws and the company's procedures to comply with them, see the company's Antitrust Policy.

**If you are unsure whether a particular situation or activity amounts to a violation of the antitrust laws, consult with the Chief Compliance Officer or other member of the Legal Department before doing anything.**

## ENVIRONMENTAL LAWS

RRD's environmental health and safety policy is to strive continuously to improve global Environmental Health and Safety performance by using practices that protect employees and the environment, including reducing the quantity of emissions, developing opportunities for recycling and pollution prevention and using paper, energy, and other resources more efficiently.

The company's policy is to obey strictly the laws that protect the environment. Employees have a responsibility to follow environmental laws, not only because it makes sense, but also because a violation can be a crime. Any person who knowingly violates requirements or prohibitions of such laws, including the stated conditions of approved permits, can be subject to criminal fines and penalties.

Most of the company's air and water discharges are covered by government permits. It is a crime to violate the discharge limits or monitoring requirements of an air or water permit knowingly or willfully, or to file false or misleading statements or reports with a government agency.

Hazardous wastes must be handled according to the law. Individuals and companies that mishandle hazardous waste run a substantial risk of being prosecuted. Violators have been fined or imprisoned for improper dumping of waste (for example, on empty lots, highways or in sewers), for spills that were not reported as required by law and for other types of intentional and even negligent conduct.

**If you are unsure whether a particular situation or activity amounts to a violation of environmental laws, review the company's environmental policies, and if you still have questions, consult your Environmental Health and Safety Lead, the Chief Compliance Officer or other member of the Legal Department <u>before</u> doing anything.**



# EMPLOYEE SAFETY AND HEALTH LAWS

Providing a safe environment has always been RRD's first priority. We regard working safely as our single most important job and join many of our clients in regarding safety as a key measure of operational excellence. We have established a series of interrelated standards that define how health and safety should be managed across our global operations. RRD's goal is zero injuries. This important objective is reflected in practices and programs that have enabled our employees to post safety metrics that far outperform the industry's average. RRD identifies and assesses emergency situations and events, and minimizes their impact by implementing emergency plans and response procedures, including: emergency reporting, employee notification and evacuation procedures, worker training and drills, appropriate fire detection and suppression equipment, adequate exit facilities and recovery plans.

We must comply fully with all federal, state and local health and safety laws and regulations. Violations of such laws can subject the company and its employees to criminal penalties. It is your responsibility to prevent accidents by maintaining a safe work environment,

following safe work procedures and practices, and using all required personal protective equipment.

Further, the company is committed to providing a safe work environment through the absence of the use of illegal drugs and alcohol, or the abuse of legal drugs, and through compliance with the company's Workplace Violence Policy. Alcohol and drug abuse, the sale of illegal drugs or violence can result in discipline up to and including separation, whether or not the acts occur in or away from the workplace.

**If you are unsure whether a particular situation or activity amounts to a violation of worker health and safety laws, review the company's employee health and safety policies, and if you still have questions, consult with your supervisor, manager or facility Environmental Health and Safety Lead, the Chief Compliance Officer or any other member of the Legal Department before doing anything. If you believe any situation involves the use of drugs or alcohol, you should immediately notify your supervisor or manager, your Human Resources Manager or a Vice President of Human Resources.**

commit.

> We are committed to safe, healthful working conditions for all our employees.

## DISCRIMINATION

The company's policy is to select, place and deal with all its employees without discrimination based on race, religion, color, national origin, sex, gender identity or expression, age, disability, perceived disability, sexual orientation, veteran status, genetic information or on the basis of any other status protected by applicable federal, state or local laws. Equal opportunity is one of the company's firmest and most basic beliefs. In the U.S., we maintain Affirmative Action programs to help assure fairness in the hiring and advancement of minorities, women, veterans and people with disabilities.

The company also will ensure that employees and applicants will not be subjected to harassment, intimidation, threats, coercion or discrimination because they have engaged in or may engage in the following activities: (1) filing a complaint; (2) assisting or participating in an investigation or compliance review or hearing; (3) opposing any act or standard made unlawful by federal, state or local law requiring equal opportunity; or (4) exercising any other right protected by law.

Further it is the responsibility of each of us to help the company provide a work atmosphere free of harassing, abusive, disrespectful, disorderly, disruptive or other unprofessional conduct. Every employee is expected and required to treat all other employees with respect and dignity. Annual training is provided to emphasize our commitment.

**If you are unsure whether a particular situation or activity is consistent with the company's equal employment opportunity or workplace principles, review the company's equal employment opportunity or workplace policies, and if you still have questions, consult your supervisor, manager, Human Resources, the Chief Compliance Officer or member of the Legal Department before doing anything.**

> **Each employee should work in an atmosphere free of discrimination of any type or form, and free of sexual harassment.**

## EMPLOYEE WORKING CONDITIONS

Forced, bonded or indentured labor or involuntary prison labor shall not be used under any circumstances. All workers will be voluntary, and workers should be free to leave upon reasonable notice. Workers shall not be required to surrender government-issued identification, passports or work permits as a condition of employment.

The use of child labor shall not be used under any circumstances. The term "child" refers to any person under the age of 15, under the minimum age for completion of compulsory education, or under the minimum age for employment in any particular country, whichever is highest. The employment of young workers below the age of 18 shall only occur in non-hazardous work and when young workers are above the Country's legal age established for completing compulsory education. We support the use of legitimate workplace apprenticeship, internship and other similar programs that comply with all laws and regulations applicable to such programs.

RRD fairly compensates its employees by providing wages that are in compliance with the local and national laws of the jurisdictions in which we do business.

RRD also maintains employee work hours in compliance with local laws, applicable laws of the jurisdictions, and limitations mutually agreed to with Clients in geographies we do business.

RRD recognizes our employees right to join or not join a union associations and to collectively bargain in union locations. We believe that all parties' interests are best served when we maintain good, solid and direct working relationships with our employees, clients and suppliers.

**If you are unsure whether a particular situation or activity is consistent with these policies, consult with your supervisor, manager, Human Resources, the Chief Compliance Officer or other member of the Legal Department before doing anything.**

> **We will work hours in compliance with local laws and applicable laws of the jurisdictions in which we do business.**

## GOVERNMENTS AND GOVERNMENT AGENCIES

The company has significant dealings with federal, state, local and foreign governments, both as a supplier of services and as a corporate citizen. Governments are entitled to respect and to be treated with integrity. Statements made and records submitted to government purchasing agents are not to be intentionally misleading or inaccurate. Bids are to be made in good faith. Sufficient care must be taken to ensure proper recording and charging of all costs to the proper account (this includes accurately filling out time cards with the hours worked).

The company's dealings with governments are also to be done at "arm's length". No employee in any

country may, directly or indirectly, offer or make any payment, gift, bribe, secret commission or other benefit to influence the decision or action of any government employee, official, candidate or political party, or any private entity with which we seek to do business.

**If you are unsure whether a particular situation or activity with respect to a government or government agency might constitute a violation of the law, review the company's policies regarding dealings with governments, and if you still have questions, consult with the Chief Compliance Officer or other member of the Legal Department before doing anything.**

## ANTI-CORRUPTION LAWS INCLUDING THE FOREIGN CORRUPT PRACTICES ACT

We cannot, directly or indirectly, pay bribes to or otherwise improperly influence government officials, political parties or candidates for political office, even if such a payment or transfer is requested by a foreign national or called something other than a bribe. We cannot do indirectly what cannot be done directly; improper payments to intermediaries of any kind will not be tolerated.

A violation of this policy, no matter where it occurs and whether you are an employee of the parent company or any of its domestic or international affiliates, may be a violation of United States' law and can subject the company and the individual to fines and other criminal penalties, including incarceration.

Principles of Ethical Business Conduct



fair.

We will be fair and accurate in our dealings with government, both as a regulator and as a client.

Principles of Ethical Business Conduct



Our Anti-Corruption Policy prohibits "facilitating" payments of any kind. A facilitating payment is a small payment to a government employee to expedite or secure performance of a routine non-discretionary governmental action. Such payments are prohibited absent written pre-approval of the Chief Compliance Officer.

For a more detailed statement regarding the company's policies in this area, see the policy entitled "Anti-Corruption Policy."

> We will not make payments to influence government officials.

Principles of Ethical Business Conduct

34

33

## SECURITIES LAWS AND CONFIDENTIAL INFORMATION

If investors believe that the price of our company's stock or other securities is subject to unfair manipulation by employees, they will lose faith in us. Additionally, we must protect and not misuse the confidential information of our clients, suppliers and other business partners.

Accordingly, employees who, through their employment, obtain confidential information about the company, its clients, suppliers or others with whom the company may negotiate, may not use the information for their own or others' personal advantage, including friends or family members. This includes "insider trading" – that is, buying or selling stock or other securities issued by the company, its clients, suppliers or other business partners, based on confidential information or attempting to "beat the market" by purchasing or selling stock shortly before, or simultaneously with or within a short time after public release of confidential information. Insider trading is a criminal offense, with substantial monetary penalties and jail terms.

Confidential information includes any important information that has not been made available to the public and that provides insight into current or anticipated business activities of the company, its clients, suppliers or other business partners that an investor would consider helpful in deciding whether to buy or sell stock or other securities.

> Employees will not trade in securities of the company, its clients, suppliers or other business partners based on confidential information.

Some examples of confidential information:

• potential mergers, acquisitions, joint ventures or restructuring;

• changes in management or control of the company or another corporation;

• new products or discoveries;

• financial information, such as pending earnings and dividend announcements;

• information contained in a client's publication that the company is printing but has not been distributed to the public;

• new contracts or the loss of a contract;

• plans for securities offerings, splits or repurchases; and

• research and development activities.

If you are thinking about buying or selling stock or other securities based upon information that might be considered confidential, you must first consult with the General Counsel.

You should not discuss confidential work matters with friends, relatives or other non-employees, or in public places, such as elevators, public transportation (including airplanes) or restaurants. Do not encourage others to use confidential information to trade in the stock or other securities of the company, its clients, suppliers or other companies with which the company is dealing. All inquiries regarding the company from non-employees, such as financial analysts and journalists, should be directed to the head of Investor Relations.

For a more detailed statement of RRD's policies in these areas, see the company policies covering confidential information, trading in company securities and other related securities policies.

Employees are prohibited from taking client or Company property, including furnished raw materials, in process goods, rejected and/or finished goods, from any RRD facility, except for authorized business with the client.

**If you are unsure whether a particular activity or situation amounts to a violation of the securities laws, insider trading or personally benefiting from confidential information, consult with the Chief Compliance Officer before doing anything.**

## COMPUTER SYSTEMS

Computers are a fact of daily life. Software and data must be protected from damage, alteration, theft, fraudulent manipulation, unauthorized access and disclosure of confidential company or client information. Each employee must follow measures to keep such information secure.

Account credentials should never be shared and appropriately strong passwords should be used. Computers should not be left unlocked with confidential information on the screen if there is any chance it could be viewed by an unauthorized person.

RRD information systems, including voicemail and email, are intended to be used primarily for business purposes. Incidental personal use is permissible if the use is lawful and ethical, does not consume more than a trivial amount of resources that could otherwise be used for business purposes, does not interfere with worker productivity and does not preempt any business activity. Messages may not contain offensive or defamatory content, such as comments or images that would offend someone on the basis of his or her race, sex, national origin, color, age, religion, genetic information, perceived or actual disability, perceived or actual sexual orientation, gender identity or expression, pregnancy or military status.

Employees should be mindful of the dangers associated with computer viruses and other malware. Infected computers are a primary means by which our network and confidential data can be compromised. You should never install applications or download files (especially movies or music) that are non-work related to your RRD computer. Employees must observe copyright restrictions for all software and associated documentation. Always be mindful to not open attachments or click on links contained within email messages unless you are confident of the legitimacy of the sender and message.



The company's computer systems, including email, are company property and must be secured.

# notify.

verb /ˈnōtə fī/

inform (someone) of something, typically in a formal or official manner.

All equipment, software and data, including email, are the property of RRD and subject to authorized access and review by RRD at any time and without prior notice or permission.

All materials stored, processed, sent or received on these systems are the company's property and are subject to inspection and monitoring by the company. RRD data and that of our clients must always be used only for the intended use as approved by the data's owner. Any misuse of systems or data could lead to separation from the company.

For a more detailed summary of the company's policies in these areas, consult the company's electronic communications policies and other related policies.

**Employees should immediately report any suspicious actions or activity on our systems or computer network to the IT Help Desk. If you are unsure whether a particular activity or situation amounts to a violation of the company's information systems and data policies, consult with your Information Technology Manager, the Chief Information Security Officer or the Chief Information Officer before doing anything.**

## GOVERNMENT INVESTIGATIONS AND INFORMATION REQUESTS

Prosecutors and government regulators have broad authority to investigate possible violations of law. They can convene grand juries, subpoena documents and seek interviews or testimony of company employees.

Company policy is to cooperate with every reasonable request of government investigators. Employees are also expected to cooperate with these requests and all investigations whether internal or external. At the same time, the company is entitled to all the safeguards provided by law for the benefit of persons under investigation or accused of wrongdoing, including legal representation.

**If a representative of any government or government agency contacts you or requests access to data or documents for the purposes of an investigation, you must refer the representative to the General Counsel or other member of the Legal Department immediately, and then notify the General Counsel or other member of the Legal Department. You must also preserve all materials, including documents that might relate to the investigation.**



Direct dial access

# MONITORING AND REPORTING OF VIOLATIONS

If you are aware of a violation of law or a company policy, including the policies set forth in these **Principles of Ethical Business Conduct**, you should report this information to your supervisor, manager, the Chief Compliance Officer or a member of the Legal Department. Alternatively, if you wish to remain anonymous, you may report your concerns using the company's toll-free "Ethics HotLine" at 1-800-261-4921 (from the United States or Canada) or online at http://www.rrdopendoor.com. If you are calling from outside the United States or Canada, please call the number for your country listed on the chart on page 27. These toll-free numbers are available 24 hours per day, seven days each week.

When you call, be sure to provide enough information for the company to be able to follow up (for example, names of persons allegedly involved, dates and nature of activity). The company will investigate all reports of violations. You should not investigate on your own but leave such work to the appropriate people chosen by the company.

No employee should make a false report of a violation. No employee will be penalized for making a good-faith report, nor will the company tolerate retaliation against an employee who makes a good-faith report.

If you report a violation and in some way are also involved in the violation, the fact that you stepped forward will be considered.

While reports of violations should be addressed to your supervisor, management or the RRD Ethics HotLine, questions regarding laws or the company's policies may be directed to the Chief Compliance Officer.

**Deborah L. Steiner**
**Executive Vice President, General Counsel**
**Chief Compliance Officer**

## ETHICS HOTLINE INTERNATIONAL TELEPHONE NUMBERS

Call our hotline numbers for more information.

| Country | Ethics Hotline Number | Country | Ethics Hotline Number |
|---|---|---|---|
| United States | 800.261.4921 | Ireland | 00.800.1777.9999 |
| Australia | 0011.800.1777.9999 | Italy | 00.800.1777.9999 |
| Austria ** | +1.720.514.4400 | Japan | 0800.170.5621 |
| Barbados** | +1.720.514.4400 | Korea, Republic | 002.800.1777.9999 |
| Brazil | 0.800.038.1449 | Mexico | 01.800.681.1896 |
| Canada | 1.800.261.4921 | Netherlands | 00.800.1777.9999 |
| Chile | 1230.020.3559 | Philippines | 00.800.1777.9999 |
| China | National: 400.1. Mobile Enabled: 400.120.9040 | Poland | 00.800.111.3819 |
| | | Saint Lucia ** | +1.720.514.4400 |
| Costa Rica | 506.4000.3876 | Singapore | 001.800.1777.9999 |
| Czech Republic | 800.701.383 | Spain | 00.800.1777.9999 |
| El Salvador ** | +1.720.514.4400 | Sri Lanka | Inside Colombo: 247.2494 Outside Colombo: 011.247.2494 |
| France | 00.800.1777.9999 | | |
| Germany | 00.800.1777.9999 | Switzerland | 00.800.1777.9999 |
| Guatemala | 502.23784832 | Trinidad and Tobago ** | +1.720.514.4400 |
| Honduras ** | +1.720.514.4400 | United Kingdom | 00.800.1777.9999 |
| Hong Kong | 001.800.1777.9999 | Vietnam | 122.80.390 |
| Hungary | 00.800.1777.9999 | | |
| India | Tamil: +000.800.100.4124 Malayalam: +000.800.100.4053 | | |

** Use the number listed for a collect call/reverse charge call. Operator assistance may be required and local charges may apply. When dialing internationally, please ensure you are using the appropriate exit and country codes specific to your location and where you are dialing.



We all share a responsibility to
understand and
follow these Principles.



© 2020 R.R. Donnelley & Sons Company, all rights reserved. RR DONNELLEY, RRD and
RRD (Sty ized) are trademarks or registered trademarks of R.R. Donnelley & Sons Company.
All other trademarks are the property of R.R. Donnelley or their respective owners.

# Exhibit 5

---------- Forwarded message ----------
From: **John Pappas** <john.p.pappas@rrd.com>

To: <misha@domeprinting.com>

Let me know what we can do on this one. Pretty sure we would bill

---------- Forwarded message ----------
From:
Date: Wed, Nov 25, 2020 at 7:27 AM

To: <john.p.pappas@rrd.com>

1

Hi john!!!

Do you █████████████          Do you have on hand?  A friend runs a dog rescue and ███████████████

Let me know if you can do and what size?

Thank you!!!

On Nov 24, 2020, at 5:51 PM, ██████████████████████████

Visit Us On Facebook


--

John Pappas | PSP

Cell: 925.200.0268

john.p.pappas@rrd.com

# Exhibit 6

---------- Forwarded message ---------
From: **John Pappas** <john.p.pappas@rrd.com>
Date: Wed, Dec 2, 2020 at 9:16 AM
Subject: Re: [EXTERNAL] Co-Mingle
To: Jeff Pappas <jeff@printcpi.com>

Hey Bro,

I did have a nice lunch with ▮▮▮▮▮▮▮ and the meeting went as expected, blah, blah, blah. ▮▮▮▮
▮▮▮▮▮▮ are not sales oriented and they pretty much have their hands tied anyway with the
direction ▮▮▮ is headed. I am fairly certain I am taking the position at Dome. ▮▮▮▮▮▮▮▮▮ are
on board as are the ▮▮▮▮▮▮▮▮▮▮ and I am working on ▮▮▮▮▮▮ I also contacted
▮▮▮▮▮▮▮▮▮ and she is all for it and excited as they need the ▮▮▮ bug and a
vendor that has the capabilities of Dome. I agree with you that Dome will be best for me to be able
to take care of ▮▮▮ as well. It gives you way more capabilities than the others. I am still meeting

1

with ▮▮▮ and unless something extraordinary comes of that it is pretty much a done deal. The only other thing I am considering is going it on my own and ▮▮▮ is all for it and says they will give me all of their work! Just makes me have to think about it. I'll call you and we can talk further about it as I appreciate your input.

As far as the co-mingling at RRD, I did reach out and I am waiting on some info and a contact person. I did find out we partner with ▮▮▮▮▮ (or whatever they call themselves now) and have exclusive RRD rates. I'll get back to you as soon as I can with solid info.

Thanks,
Johnny

On Wed, Dec 2, 2020 at 12:41 PM Jeff Pappas <jeff@printcpi.com> wrote:

Hello Johnny,


I hope you had a nice meeting with ▮▮▮▮▮▮ I know you have some decisions to make soon and I am happy to throw my two cents in. Kevin and I decided that the soonest we would hire anyone is January 2022. When you get a moment can you send me some contact info for Comingling with RRD in IL?



Thanks,



--



Jeff Pappas

Cornerstone Printing, Inc.

448 Ignacio Blvd, #337

Novato, CA 94949

510-760-7634 cell

415-983-2180 x221 office




--

2

John Pappas | PSP

Cell: 925.200.0268

john.p.pappas@rrd.com

# Exhibit 7

---------- Forwarded message ---------
From: **John Pappas** <john.p.pappas@rrd.com>
Date: Thu, Dec 10, 2020 at 12:59 PM
Subject: Fwd: [EXTERNAL] RE: Estimate Request for ███████████
To: John Pappas III <jppdot3@gmail.com>

---------- Forwarded message ---------
From: ████████████████████
Date: Tue, Dec 8, 2020 at 11:46 AM
Subject: [EXTERNAL] RE: Estimate Request for ███████████████
To: John Pappas (john.p.pappas@rrd.com) <john.p.pappas@rrd.com>

1

Hi John,

I hope you are still staying safe and healthy during this COVID19 pandemic.  Your organization did another fantastic job for us on our previous ███████████ and as a result I am requesting an estimate for our upcoming ██████████ in January 2021.  Please ensure the estimate includes all costs so that we have a clear picture of the expected total amount.

Thank you for your assistance in this matter.

Confidentiality Statement-This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to which they are addressed. This communication may contain material protected by

HIPAA, ERISA, other federal or state law or the attorney-client privilege. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. You are instructed to destroy the message and notify ████████████████ by immediate reply that you have received this e-mail and any accompanying files in error. Please bring any questions you may have on this instruction to the attention of ████████████ immediately. ████████████████ does not accept responsibility for changes to e-mails that occur after they have been sent.

--

John Pappas | PSP

Cell: 925.200.0268

john.p.pappas@rrd.com

# Exhibit 8

# Exhibit 8 Pending Sealing Request before Court

# Exhibit 9



---------- Forwarded message ---------
From: **John Pappas** <john.p.pappas@rrd.com>
Date: Mon, Jan 11, 2021 at 1:21 AM
Subject: Fwd: [EXTERNAL] Memorandums - ██████████
To: John Pappas III <jppdot3@gmail.com>

---------- Forwarded message ---------
From: ██████████████████
Date: Wed, Dec 16, 2020 at 12:45 PM

1

Subject: [EXTERNAL] Memorandums -
To: John Pappas (john.p.pappas@rrd.com) <john.p.pappas@rrd.com>

Hi John,

Attached are the memorandums for our upcoming mailing.

Confidentiality Statement-This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to which they are addressed. This communication may contain material protected by HIPAA, ERISA, other federal or state law or the attorney-client privilege. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. You are instructed to destroy the message and notify ▮▮▮▮▮▮▮▮▮▮s by immediate reply that you have received this e-mail and any accompanying files in error. Please bring any questions you may have on this instruction to the attention of ▮▮▮▮▮▮▮▮▮▮▮▮▮mmediately. ▮▮▮▮▮▮▮▮▮▮▮▮does not accept responsibility for changes to e-mails that occur after they have been sent.

--

John Pappas | PSP

Cell: 925.200.0268

john.p.pappas@rrd.com

2

# Exhibit 10



---------- Forwarded message ---------
From: **John Pappas** <john.p.pappas@rrd.com>
Date: Wed, Jan 13, 2021 at 7:45 AM
Subject: Re
To:

I have some news so I'll call you

John  Pappas,III



On Jan 13, 2021, at 11:19 AM

1

Hi John,

Is RRd still selling ███████████

Please provide quote with minimum quantity along with ███████████

Thank you,

███████████████████

# Exhibit 11



---------- Forwarded message ---------
From ██████████
Date: Wed, Feb 24, 2021 at 1:31 AM
Subject: [EXTERNAL]██████████
To: John Pappas III <john.p.pappas@rrd.com>

██████████

Thanks.

Begin forwarded message:



**Subject:**
**Date:** February 23, 2021 at 4:58:14 PM PST
**To:** John Pappas <jpappas@domeprinting.com>

John,



Thanks.

John

# Exhibit 12

Message

| | |
|---|---|
| **From:** | John Pappas [jppdot3@gmail.com] |
| **Sent:** | 12/9/2020 5:03:29 PM |
| **To:** | misha@domeprinting.com |
| **Subject:** | Fwd: [EXTERNAL] RE: Estimate Request for WCTPT New Hire Mailing |

**EXHIBIT**

**14**

JOHN PAPPAS

Hey Misha,

Here's a project coming in January, I do this twice a year, and they are ready to move with me to Dome. I have to get her pricing this week. Let me know if you have questions on anything.

Thanks,
Johnny

---------- Forwarded message ---------
From: **John Pappas** <john.p.pappas@rrd.com>
Date: Wed, Dec 9, 2020 at 5:00 PM
Subject: Fwd: [EXTERNAL] RE: Estimate Request for WCTPT New Hire Mailing
To: John Pappas III <jppdot3@gmail.com>

---------- Forwarded message ---------
From: **Miriam Williams** <mwilliams@nwadmin.com>
Date: Tue, Dec 8, 2020 at 11:46 AM
Subject: [EXTERNAL] RE: Estimate Request for WCTPT New Hire Mailing
To: John Pappas (john.p.pappas@rrd.com) <john.p.pappas@rrd.com>

Hi John,

I hope you are still staying safe and healthy during this COVID19 pandemic. Your organization did another fantastic job for us on our previous New Hire mailings and as a result I am requesting an estimate for our upcoming New Hire mailing in January 2021. Please ensure the estimate includes all costs so that we have a clear picture of the expected total amount.

We have two sections of the mailing (Mailing #1 and Mailing #2 below) combined into <u>one billing</u> with a mailing target date of **<u>January 16, 2021.</u>** We have a Seattle Non-Profit Mailing Permit #31991.

### Mailing Section #1 – 14.9 ounces

**6,795** employees *(this number may increase slightly once the final number is received)*

Receive a one page memo, 2018 SPD booklet, 2020 Annual Funding Notice and Employee Status & Information envelope

### Mailing Section #2 – 14.6 ounces

**166** employers *(this number will be reduced once the final number is received)*

Receive a one page memo, 2018 SPD booklet, 2020 Annual Funding Notice

Confidential

Would you please confirm that you have the 2018 SPD booklets and matching envelopes as well as the 2020 Annual Funding Notices to cover this mailing.  I will also provide you with the two mailings lists,  Employee Status & Information envelopes and the two memorandums for you to print.

Thank you for your assistance in this matter.

Miriam Williams | Northwest Administrators, Inc.

Western Conference of Teamsters Pension Trust

Pension Accounting Contract Administration Overall Coordinator

Assistant to the Administrative Manager

2323 Eastlake Avenue East, Seattle, WA 98102

P: 206-726-3265

Email: mwilliams@nwadmin.com

Confidentiality Statement-This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to which they are addressed. This communication may contain material protected by HIPAA, ERISA, other federal or state law or the attorney-client privilege. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. You are instructed to destroy the message and notify Northwest Administrators by immediate reply that you have received this e-mail and any accompanying files in error. Please bring any questions you may have on this instruction to the attention of Northwest Administrators immediately. Northwest Administrators does not accept responsibility for changes to e-mails that occur after they have been sent.

--

John Pappas | PSP

Cell: 925.200.0268

john.p.pappas@rrd.com

# Exhibit 13

**From:** George Lovas [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=44CA42BCCEEE4924A96E07B46DC56356-GEORGE LOVA]
**Sent:** 1/5/2021 8:39:17 AM
**To:** Misha Pavlov [/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=c2793667f3a641438c176f92e3e1c3f9-Misha Pavlo]
**Subject:** FW: █████ stimate needed
**Attachments:** FFTY & FC Jan 2021 Promo Cards 2 Lots RFE.pdf

Done,
In your bin
Issue Number 338955
COMBO 20/4 running 20 x 26 4cp/4cp PERFECT
Then Digital Variable (Blk One Side only - Indigo set at 400%)
Trim and Carton pack

G

---

**From:** Misha Pavlov <misha@domeprinting.com>
**Sent:** Monday, January 4, 2021 3:39 PM
**To:** George Lovas <GLovas@domeprinting.com>
**Cc:** John Pappas III <ippdot3@comcast.net>
**Subject:** Fwd: █████ estimate needed

Hi George,

See attached RFE.
Thanks

Begin forwarded message:

**From:** John Pappas <ippdot3@gmail.com>
**Subject:** █████ stimate needed
**Date:** January 4, 2021 at 2:52:44 PM PST
**To:** Misha Pavlov <misha@domeprinting.com>

Hey Misha,

Can you forward this to the estimator and cc me so I can get this going. I am trying to move this monthly piece of work.

Thanks,
Johnny



Confidential

# Exhibit 14

**From**: Jim Taylor [jim@carpedata.com]
**Sent**: 1/7/2021 9:35:06 AM
**To**: Misha Pavlov [/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=c2793667f3a641438c176f92e3e1c3f9-Misha Pavlo]
**CC**: John Pappas [/o=ExchangeLabs/ou=Exchange Administrative Group
(FYDIBOHF23SPDLT)/cn=Recipients/cn=92cd76c2fa49492d86cb4d16eb21b95d-John Pappas]
**Subject**: Pappas Contacts
**Attachments**: Jobz contacts.tab


Misha,

This is best done by someone inside the LAN, but will only take you a minute. ADDRESS tab > Go To: Output
Menu > Export Data tab > <u>Import from JOBZ!</u>… > Point to the file attached file of John's contacts and Open.
638 contacts will be imported. **Be sure that he is created first as a user in the Get_JOBZ file with his name
exactly John Pappas.**




Always at your service,
--
Jim Taylor
Developer of JOBZ!

Carpe Data
*Since 1996*

5563 Calle Ocho

Confidential

Carpinteria CA 93013
408-666-7356
jim@carpedata.com
http://www.carpedata.com

Meet Me Online, by Appointment: https://www.gotomeet.me/jobz

Please take the JOBZ! User Survey: http://www.carpedata.com/jobz-user-satisfaction.html